MAX CANTER, trustee in bankruptcy, *vs.* S. LAWRENCE SCHLAGER & others.

Suffolk. January 19, 1971. — March 5, 1971.

Present: TAURO, C.J., CUTTER, SPIEGEL, QUIRICO, & BRAUCHER, JJ.

*Subrogation. Surety. Uniform Commercial Code,* Security interest, Filing of financing statement. *Bankruptcy,* Rights of trustee.

Where it appeared that performance and payment bonds were given to the owners of land by a contractor who agreed to construct a building thereon and assigned to the surety on the bonds all payments due or to become due under the construction contract, and that the contractor was adjudicated bankrupt and a trustee in bankruptcy appointed after the surety had completed construction of the building and had paid subcontractors for labor and materials furnished thereon, it was held that the surety became subrogated to the rights of the contractor with respect to an unpaid balance due to him on the contract price, and was entitled to priority over the trustee as to such balance; the surety's subrogation rights were not "security interests created by contract" within the Uniform Commercial Code, G. L. c. 106, §§ 9–101 et seq., and the filing of a financing statement thereunder with respect to the assignment was not necessary for the preservation of the surety's priority. [791–792]

The rights of a trustee in bankruptcy as a judgment creditor with a lien on property of a bankrupt building contractor under 11 U. S. Code § 110 (c) (1964) were subordinate to the subrogation rights of the surety on performance and payment bonds given by the contractor prior to the filing of the petition in bankruptcy. [795–796]

CONTRACT. Writ in the Superior Court dated January 26, 1966.

The action was heard by *Noonan, J.*

*Edwin A. McCabe (Sydney Berkman & Jeffrey M. Smith* with him) for the plaintiff.

*George M. Herlihy (John F. Gosselin* with him) for the defendants.

BRAUCHER, J.   This is an action of contract brought by
the trustee in bankruptcy of Zef Parabicoli & Sons, Inc. (the
contractor) against S. Lawrence Schlager, Judith R. Schlager,
Alba A. Jameson and Arlene T. Vecchi (the owners) for
money owed under a written construction contract.   In
May, 1963, the contractor agreed with the owners to build
a post office on their property in Wellesley for a price later
amended to $109,000.   By the amendment the work was to
be substantially completed by July 1, 1964, and time was to
be of the essence.   In accordance with the contract, the
contractor provided performance and payment bonds, and
in its application for the bonds assigned to the surety,
Maryland Casualty Company, all payments due or to be-
come due under the contract.   No financing statement with
respect to the assignment was filed under the Uniform Com-
mercial Code, G. L. c. 106, §§ 9–101 et seq.   The surety ap-
pears to be the real defendant in this action, under an agree-
ment to indemnify the owners.

Work began in January, 1964, and by June 26, 1964, the
owners had paid the contractor $66,650.   On June 26, 1964,
an involuntary petition in bankruptcy was filed against the
contractor, but by order of the referee in bankruptcy the
contractor continued to operate under the supervision of a
receiver.   On August 1, 1964, the Post Office Department
accepted the building and began to pay rent under a lease
from the owners.   On October 27, 1964, the contractor was
adjudicated a bankrupt and the plaintiff, who had been the
receiver, was appointed trustee.

The owners refused to pay a requisition in the amount of
$27,990 submitted by the contractor on July 1, 1964, for
work completed up to that date.   On July 21, there was a
conference of representatives of the Post Office Department,
the surety, the contractor, its receiver and the owners; the
attorney for the surety, at the request of the owners and
with the approval of the contractor, agreed that the surety
would assume responsibility for completion.   Late in Sep-
tember, the contractor submitted a final requisition in the
amount of $42,850, which the owners refused to pay.   In

October, 1964, the surety paid more than $60,000 to subcontractors who had furnished labor and materials for the building. On August 30, 1965, the owners paid the balance of the contract price, less more than $5,000 in disputed "back charges," to the surety in the net amount of $36,630.11. The owners now contend that payment to the surety discharged any obligation to the plaintiff.

The judge, sitting without a jury, held that the surety's claim to the contract balance was not subject to the Uniform Commercial Code and found for the owners. We agree.

1. If the surety were claiming the balance due under the contract by virtue of the assignment to it in the contractor's bond application, it would be fairly arguable that it was claiming a "security interest" in a "contract right." G. L. c. 106, §§ 1-201 (37), 9-102, 9-106. If there were such a security interest, it would be subordinate to the rights of a person who became a lien creditor without knowledge of the security interest and before it was perfected, and a trustee in bankruptcy would ordinarily have the rights of such a lien creditor. G. L. c. 106, §§ 9-301 (1) (b), 9-301 (3). Bankruptcy Act, § 70c, 11 U. S. C. § 110 (c) (1964). To perfect a security interest, a financing statement must be filed unless the case is within one of several exceptions. G. L. c. 106, § 9-302 (1). We do not pass on the question whether the assignment to the surety in this case was excepted as "a transfer of a contract right to an assignee who is also to do the performance under the contract," G. L. c. 106, § 9-104 (f), or "an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor . . . ." G. L. c. 106, § 9-302 (1) (e). See Gilmore, Security Interests in Personal Property, §§ 10.5, 19.6.

2. The surety makes an alternative claim, not resting on the assignment to it by the contractor, that it is subrogated to the rights of the contractor to the contract balance, to the rights of the owners, and to the rights of the subcontractors it paid. Such claims are not superseded by the

Uniform Commercial Code. Section 1–103 of the Code provides in part, "Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions." "No provision of the Code purports to affect the fundamental equitable doctrine of subrogation." *French Lumber Co. Inc.* v. *Commercial Realty & Fin. Co. Inc.* 346 Mass. 716, 719. "Of basic importance is the general rule of Section 9–102 (2) that Article 9 'applies to security interests *created by contract.*' (Emphasis supplied.) Rights of subrogation, although growing out of a contractual setting and ofttimes articulated by the contract, do not depend for their existence on a grant in the contract, but are created by law to avoid injustice. Therefore, subrogation rights are not 'security interests' within the meaning of Article 9." *Jacobs* v. *Northeastern Corp.* 416 Pa. 417, 429.

Our conclusion that filing under the Code is unnecessary to preserve the priority of a surety's right of subrogation over the rights of a construction contractor's trustee in bankruptcy is reinforced by decisions of other courts. *Jacobs* v. *Northeastern Corp., supra,* (receiver against surety, Pennsylvania law). *National Shawmut Bank* v. *New Amsterdam Cas. Co. Inc.* 411 F. 2d 843 (1st Cir.) (assignee bank against surety on Federal contract, Massachusetts law). *Framingham Trust Co.* v. *Gould-Natl. Batteries, Inc.* 427 F. 2d 856 (1st Cir.) (assignee bank against surety, Massachusetts law). *Home Indem. Co.* v. *United States,* 433 F. 2d 764 (Ct. Cl.) (surety on Federal contract against trustee in bankruptcy of assignee finance company, Illinois law). *National Sur. Corp.* v. *State Natl. Bank,* 454 S. W. 2d 354, 356 (Ky.) (surety against assignee bank, Kentucky law). *Aetna Cas. & Sur. Co.* v. *Perrotta,* 62 Misc. 2d (N. Y.) 252 (surety against assignee finance company, New York law). Contrary decisions in *United States* v. *G. P. Fleetwood & Co. Inc.* 165 F. Supp. 723 (W. D. Pa.) (surety on subcontract against trustee in bankruptcy of subcontractor), and *Hartford Acc. & Indem. Co.* v. *State Pub. Sch. Bldg. Authy.* 26 D. & C. 2d (Pa.) 717 (surety against assignee bank), are

not authoritative with respect to Pennsylvania law after the decision in *Jacobs* v. *Northeastern Corp., supra.* So far as *Maryland Cas. Co.* v. *Mullett,* 295 F. Supp. 875 (W. D. Pa.), is contrary, it also departs from Pennsylvania law. The Uniform Commercial Code is to be "liberally construed and applied to promote its underlying purposes and policies," which include a purpose and policy "to make uniform the law among the various jurisdictions." G. L. c. 106, § 1–102.

3. The plaintiff here argues that we should "establish a degree of certainty (indeed, even a degree of sanity) to the determination of priorities among claimants to construction contract proceeds" by enunciating "an absolute requirement that sureties engaged in bonding construction projects perfect security interests in their assignment by filing." See Notes, 4 B. C. Ind. & Commercial L. Rev. 748, 755; 65 Col. L. Rev. 927, 933. We find that the draftsmen and sponsors of the Uniform Commercial Code did not overlook the problems of construction contract sureties. The 1952 Official Draft included § 9–312 (7), subordinating the surety's interest to a later interest taken by a party who gave new value to enable the debtor to perform his obligation; that provision was deleted in 1953, with an explanation by the editorial board that representatives of the surety companies had complained that it changed settled law and that the problem should be left to agreements for subordination.[1]

---

[1] "The Surety Companies' representatives convincingly took the position that subsection (7) as it stands is a complete reversal of the case law not only of the Supreme Court of the United States but also of the highest courts of most of the states. They cited *Prairie State Bank* v. *United States,* 164 U. S. 227 (1896); *Henningsen* v. *U. S. F. & G.,* 208 U. S. 404 (1908); *U. S.* v. *Munsey Trust,* 332 U. S. 234 (1947), at 240; 9 Am. Jur. 72, § 114, 115; 43 Am. Jur. 939, § 197 et seq.; 60 C. J. Subrogation § 87; Stearns Law of Suretyship, 5th Ed. (1951), page 472; *Appeal of Lancaster County Natl. Bk.,* 304 Pa. 437 (1931); and 127 A. L. R. 974, 976.

"The typical case involved is a case in which a surety company, as a prerequisite to the execution of a performance bond, requires a contractor to make an assignment of all moneys coming to the contractor from the owner. Later, the contractor goes to a bank and obtains a loan presumably or actually for the purpose of enabling him to perform his contract.

"Under the cited case law, the surety's rights come first as to the funds owing by the owner unless the surety has subordinated its right to the bank. Subsection (7) of the Code as written would reverse the situation and give the bank priority in all cases.

Canter *v.* Schlager.

See *National Shawmut Bank* v. *New Amsterdam Cas. Co.*
411 F. 2d 843, 846, n. 4 (1st Cir.). The 1952 proposal did
not include a requirement of filing to perfect rights of sub-
rogation, and we do not believe we should insert a require-
ment omitted by legislative draftsmen who considered the
problem. It is possible for parties dealing with a construc-
tion contractor to be ignorant of the existence of a surety
bond. See, e.g., *Aetna Cas. & Sur. Co.* v. *Harvard Trust Co.*
344 Mass. 160, 164. But it could well be a rational legislative
judgment that the practice of furnishing performance and
payment bonds in connection with construction contracts is
so common and so well known that a requirement of public
filing is unnecessary. Compare *Aetna Cas. & Sur. Co.* v.
*Harvard Trust Co., supra,* at 173.

4. The plaintiff argues that, even if "the anachronistic
doctrine of equitable subrogation still has vitality," the
surety has only the rights of those to whose rights it would
be subrogated, and that they had none. Under *Pearlman* v.
*Reliance Ins. Co.* 371 U. S. 132, 141, and similar cases, the
surety may stand in the shoes of either (1) the contractor
whose obligations are discharged, (2) the owners to whom
it was bound, or (3) the subcontractors whom it paid. So
far as the trustee in bankruptcy asserts the rights of the
contractor, any one of these three bases of subrogation
should be sufficient. Regardless of whether the contractor
was aggrieved by the delay in payment of his requisition of
$27,990 submitted July 1, 1964, or his final requisition of
$42,850 submitted late in September, 1964, he could not
avoid the surety's right to reimbursement for more than
$60,000 paid by the surety to discharge his obligations in

---

"Under existing case law, both the contractor and the bank are in a posi-
tion to bargain with the surety which may or may not be willing to subordinate
its claim. Under subsection (7) as written in the Code the surety company
would have nothing to bargain about." Recommendations of the Editorial
Board for Changes in the Text and Comments of the Uniform Commercial
Code, Official Draft, Text and Comments Edition, pp. 24–25, April 30, 1953.
See Uniform Commercial Code § 9–312 (7), Official Draft, Text and Comments
Edition, 1952; Cramer, Uniform Commercial Code: Surety v. Lender,
3 Forum 295, 300–302. In Gilmore, Security Interests in Personal Property
§ 36.7, it is erroneously stated that the offending provision "disappeared,
without official explanation."

October, 1964. Nor could he avoid recoupment by the owners for amounts properly paid by them to the subcontractors. See *American Bridge Co. of N. Y.* v. *Boston,* 202 Mass. 374, 377; *Berkal* v. *M. De Matteo Constr. Co.* 327 Mass. 329, 334. A different case might be presented if it were found that the owners or the surety, to induce the contractor to continue, promised after trouble arose to make payments regardless of offsets. Compare *National Sur. Corp.* v. *State Natl. Bank,* 454 S. W. 2d 354, 357 (Ky.). There is no such showing here.

An argument is made, based on *Ehrlich* v. *Johnson Serv. Co.* 272 Mass. 385, 390, that the subcontractors had no claim against the owners and only an unsecured claim against the contractor. That case involved a bond required by the owner for the sole purpose of protecting itself against possible mechanics liens. Direct payment by the owner to the subcontractor on behalf of the insolvent contractor was held to constitute a voidable preference. The court recognized that payment by the surety would have involved different considerations. More recent cases have recognized "the peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys ahead of others whose claims come from the advance of money." *United States* v. *Munsey Trust Co.* 332 U. S. 234, 240. See *Matter of Dutcher Constr. Corp.* 378 F. 2d 866 (2d Cir.). That claim does not depend on their filing claims of mechanics liens; they are entitled to rely on a payment bond providing expressly that they may sue thereon. *Framingham Trust Co.* v. *Gould-Natl. Batteries, Inc.* 427 F. 2d 856, 858–859 (1st Cir.). See *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass. 416, 420; *Morse Bros. Elec. Co. Inc.* v. *Martin Shore Realty Co. Inc.* 344 Mass. 81, 84.

The plaintiff is not helped by Bankruptcy Act § 70c, 11 U. S. C. § 110 (c) (1964), giving him the rights of a judgment creditor of the bankrupt with a lien by legal proceedings. Such rights date from June 26, 1964, when the petition in bankruptcy was filed; the surety's right dates back

to the date of its bond. *Aetna Cas. & Sur. Co.* v. *Harvard Trust Co.* 344 Mass. 160, 166–168. *Prairie State Bank* v. *United States,* 164 U. S. 227, 240, relied on in *Labbe* v. *Bernard,* 196 Mass. 551, 553. *Henningsen* v. *United States Fid. & Guar. Co.* 208 U. S. 404, 411. *United States* v. *Munsey Trust Co.* 332 U. S. 234, 240. Hence the right of subrogation prevails over the rights of a lien creditor such as the trustee in bankruptcy. *Pearlman* v. *Reliance Ins. Co.* 371 U. S. 132, 136. See *Commercial Cas. Ins. Co.* v. *Murphy,* 282 Mass. 100, 104; *Duteau* v. *Salvucci,* 330 Mass. 531, 536.

5. The plaintiff complains that the surety improperly yielded to the owners' claims of more than $5,000 of "back charges." The surety paid more than $60,000 of debts owed by the contractor, and was reimbursed $36,630.11. In these circumstances, if $5,000 more was owed, it should have been paid to the surety rather than to the plaintiff.

There was no error.

*Exceptions overruled.*