AMERICAN OIL COMPANY v L A DAVIDSON, INC

Docket No. 44282. Submitted December 12, 1979, at Lansing.—Decided February 6, 1980.

Defendant L. A. Davidson, Inc. (Davidson) contracted with the Michigan State Highway Department (state) for several highway construction projects on which Davidson was to be the general contractor. Defendant American Casualty Company issued payment and performance bonds as surety on the projects, for which Davidson executed applications containing assignment and indemnity provisions. Davidson later assigned to American Casualty rights to certain property, including all accounts receivable. American Casualty filed a financing statement, perfecting its interest in the property pursuant to Article Nine of the Uniform Commercial Code (UCC). Five years later American Casualty lost its UCC protection by failing to file a continuation statement. Davidson was adjudged bankrupt and American Casualty was required to complete performance pursuant to the bonds, thus obligating the state to pay on the contracts. American Oil Company (Amoco) brought an action in the Ingham Circuit Court, against Davidson, L. A. Davidson and Virnie B. Davidson to recover on a promissory note. A default judgment was entered and Amoco attempted to satisfy it by garnishing the payments due from the state. The court allowed the state to tender an amount sufficient to satisfy the judgment, released the state from further liability and allowed American Casualty to intervene as a party defendant. American Casualty moved to establish priority to the funds, claiming equitable subrogation. Amoco argued that American Casualty had only an unperfected security interest, subordinate to the rights of a lien creditor. The court, Jack W. Warren, J., held the UCC to control and released the funds to Amoco. American Casualty appeals. *Held:*

Subrogation rights are not within the secured transactions provisions of the Uniform Commercial Code. American Casualty has priority to the funds.

Reversed.

REFERENCE FOR POINTS IN HEADNOTE
68 Am Jur 2d, Secured Transactions § 29.

SUBROGATION — UNIFORM COMMERCIAL CODE — SECURED TRANSACTIONS.

Subrogation rights are not within the secured transactions provisions of the Uniform Commercial Code (MCL 440.9101 *et seq.;* MSA 19.9101 *et seq.).*

*Glassen, Rhead, McLean & Campbell,* for plaintiff.

*Jenkins, Nystrom & Sterlacci, P.C.* (by *Chris Parfitt),* for intervenor-defendant.

Before: T. M. BURNS, P.J., and GILLIS and BASHARA, JJ.

BASHARA, J. This case involves the competing claims of a defaulting contractor's surety and a judgment lien creditor of the contractor. Defendant American Casualty Company (hereinafter known as "American Casualty") and plaintiff American Oil Company (hereinafter called "Amoco") claim funds withheld on a construction contract and deposited with the circuit court. The lower court released the funds to Amoco and American Casualty appeals.

The events giving rise to this dispute began when American Casualty, from 1965 to 1968, issued payment and performance bonds as surety for defendant L. A. Davidson, Inc. (hereinafter referred to as "Davidson"). The bonds were issued in connection with several highway construction projects for the state in which Davidson was the general contractor. As part of the consideration for the bonds, Davidson assigned its rights in the underlying construction contract on December 12, 1965. The assignment was conditional on Davidson's inability to perform its duties as general contractor.

On July 7, 1969, Davidson assigned to American Casualty its rights in certain assets, including all

accounts receivable. American Casualty perfected the later assignment under Article Nine of the Uniform Commercial Code[1] (hereinafter "UCC") by filing a financing statement[2] on July 16, 1969. However, American Casualty lost the protection of the UCC when it failed to file a continuation statement five years later.[3] Davidson was unable to complete the construction contracts and was subsequently adjudged bankrupt. American Casualty was required to complete performance pursuant to the payment and performance bonds. American Casualty's performance obligated the State Highway Department to make payments which are the subject of this litigation.

The present litigation began on July 6, 1970, when Amoco commenced an action against Davidson to recover on a promissory note. A default judgment was entered on December 18, 1970, which plaintiff attempted to satisfy by serving a writ of garnishment on the garnishee defendant, Michigan State Highway Department.

The state tendered $30,000 to the circuit court and was released of all liability.

American Casualty intervened in the action and sought priority to the funds on the basis of both the express assignments and the doctrine of equitable subrogation.

Amoco claimed priority to the funds on the basis of MCL 440.9301; MSA 19.9301, which gives a lien creditor priority over an unperfected security interest.

The lower court held that American Casualty could not assert equitable subrogation because it had filed a financing statement with respect to the

---

[1] MCL 440.9101 *et seq.;* MSA 19.9101 *et seq.*

[2] MCL 440.9302(1); MSA 19.9302(1).

[3] MCL 440.9402; MSA 19.9402.

assignments, thereby subjecting itself to the UCC, framing the basis for this appeal.

American Casualty did not waive its right to assert equitable subrogation by filing a financing statement with respect to the express assignments. Assignment rights are independent from rights derived from equitable subrogation. This distinction has been observed by both the courts[4] and legal commentators.[5]

*Canter v Schlager*, 358 Mass 789; 267 NE2d 492 (1971), involved a priority dispute between a surety and the trustee in bankruptcy of a general contractor. The surety had taken an express assignment from the contractor of all payments due or to become due under the contract. No financing statement was filed by the surety. Justice Braucher,[6] writing for the court, held that if the surety were claiming priority solely on the basis of the assignments, then the UCC would be applicable. However, in *Canter,* as in the present case, the surety was claiming priority both on the basis of the assignments and equitable subrogation.

"Such claims are not superseded by the Uniform Commercial Code. Section 1-103 of the Code provides in part, 'Unless displaced by the particular provisions of this chapter, the principles of law and equity * * * shall supplement its provisions.' 'No provision of the Code purports to affect the fundamental equitable doctrine of subrogation.' *French Lumber Co Inc v Commercial Realty & Fin Co Inc,* 346 Mass 716, 719. 'Of basic importance is the general rule of Section 9-102(2) that Article 9 "applies to security interests *created by con-*

---

[4] See *Alaska State Bank v General Ins Co of America,* 579 P2d 1362 (Alas, 1978), *Canter v Schlager,* 358 Mass 789; 267 NE2d 492 (1971).

[5] See Note, *National Shawmut Bank: Another Step Toward Confusion in Surety Law,* 64 NWU Law Rev 582 (1969).

[6] Justice Braucher was one of the principal drafters of the UCC and a professor of law at Harvard University.

*tract.''* (Emphasis supplied.) Rights of subrogation, although growing out of a contractual setting and ofttimes articulated by the contract, do not depend for their existence on a grant in the contract, but are created by law to avoid injustice. Therefore, subrogation rights are not "security interests" within the meaning of Article 9.' *Jacobs v Northeastern Corp,* 416 Pa 417, 429" *Canter v Schlater, supra,* 791-792.

The present case may be distinguished from *Canter* on the basis that a financing statement was filed to perfect the assignments.

We find that this distinction lacks significance because the drafters of the UCC intended to leave the surety's right to equitable subrogation unaffected by Article Nine. As stated in White & Summers, *Uniform Commercial Code,* § 22-5, p 771, "conflicts between sureties and third parties do not comprise an Article Nine *casus omissus.* The issue of Article Nine coverage was fought out at the drafting stage, and the surety companies prevailed in their efforts to remain outside the Article.''[7]

Having determined that American Casualty did not lose its right to assert equitable subrogation, we also conclude that American Casualty has priority to the disputed funds. The surety's priority is well settled at common law[8] and has not been

---

[7] The authors were undoubtedly referring to proposed 9-312(7) which was rejected by the drafters of the UCC. 9-312(7) would have provided:

"(7) A security interest which secures an obligation to reimburse a surety or other person secondarily obligated to complete performance is subordinate to a later security interest given to a secured party who makes a new advance, incurs a new obligation, releases a perfected security interest, gives other new value to enable the debtor to perform the obligation for which the earlier secured party is liable."

[8] See, *Prairie State National Bank of Maryland v United States,* 164 US 227; 17 S Ct 142; 41 L Ed 412 (1896), *Henningsen v United States Fidelity & Guaranty Co,* 208 US 404; 28 S Ct 389; 52 L Ed 547 (1908),

affected by the adoption of the UCC.[9]
Reversed. Costs to American Casualty.

---

*Detroit v Fidelity & Deposit Co of Maryland,* 240 Mich 213; 215 NW 394 (1927), *Lake States Engineering Corp v Lawrence Seaway Corp,* 15 Mich App 637; 167 NW2d 320 (1969).

[9] See, *Alaska State Bank v General Ins Co of America,* 579 P2d 1362 (Alas, 1978), *United States Fidelity & Guaranty Co v First State Bank of Salina,* 208 Kan 738; 494 P2d 1149 (1972), *Canter v Schlager,* 358 Mass 789; 267 NE2d 492 (1971), *Jacobs v Northeastern Corp,* 416 Pa 417; 206 A2d 49 (1965). For additional citations and a discussion of the above cases, see Shure, *The UCC Does Not Affect Adversely the Surety's Priority,* 11 Forum 630 (1976).