OLD KENT BANK-SOUTHEAST v CITY OF DETROIT

Docket No. 102691. Submitted February 8, 1989, at Detroit. Decided
   July 17, 1989.

   In 1975, Reliance Insurance Company entered into an indemnity
   agreement with Morrison Company and Morrison gave Reli-
   ance a security interest in Morrison's future accounts receiv-
   able and contract balances. Morrison entered into three con-
   tracts with the City of Detroit and Reliance issued payment
   and performance bonds on the contracts as surety for Morrison.
   In 1982, Old Kent Bank-Southeast perfected a security interest
   in Morrison's accounts receivable to secure certain loans. In
   1984, Old Kent sent a letter to the city treasurer informing of
   Old Kent's security interest. In 1985, Reliance notified the city
   of its claim against any contract proceeds due Morrison. The
   city ignored both claims and paid $85,001.82 due Morrison to
   the Internal Revenue Service, which had also levied against the
   amounts due Morrison. Reliance filed an action in federal court
   against the IRS. Old Kent tried to intervene but was not
   permitted to because of a statute of limitations. Reliance settled
   with the IRS for $79,000. Old Kent brought an action against
   the city and Reliance in the Wayne Circuit Court, alleging that
   its rights in the fund paid out by the city were superior to
   Reliance's. The court, James E. Mies, J., held that Reliance, as
   a surety, was equitably subrogated to the rights of Morrison
   and that its rights were superior to those of Old Kent. The
   court granted judgment for Old Kent against the city in the
   amount of $6,001.82, the difference between what the city paid
   out and what Reliance got. The city appealed and Old Kent
   cross appealed.

   The Court of Appeals *held:*

   1. The court did not err in holding that Reliance's subroga-
   tion rights were superior to Old Kent's perfected security
   interest. A surety does not waive his right to assert equitable

REFERENCES

Am Jur 2d, Commercial Code § 5; Judgments §§ 379 *et seq.*; Secured
   Transactions § 370; Subrogation §§ 2, 53.
See the Index to Annotations under Secured Transactions; Subroga-
   tion; Uniform Commercial Code.

subrogation by perfecting an assignment of accounts, and a surety's priority is well established in common law.

2. The notice to the city was adequate under the circumstances.

3. Res judicata does not apply to bar Old Kent's claim.

Affirmed.

1. SURETYSHIP AND GUARANTEE — SUBROGATION — EQUITY — WAIVER — ASSIGNMENT OF ACCOUNTS.

A surety does not waive his right to assert equitable subrogation by perfecting an assignment of accounts.

2. SECURED TRANSACTIONS — NOTICE — UNIFORM COMMERCIAL CODE.

Notice to an organization under the Uniform Commercial Code is effective for a particular transaction from the time it is brought to the attention of the individual conducting the transaction or from the time it would have come to his attention if the organization had acted with due diligence (MCL 440.1201[27]; MSA 19.1201[27]).

3. ACTIONS — DEFENSES — RES JUDICATA.

Res judicata does not bar a state cause of action following a party's inability to intervene in a federal action and assert its claim because of a federal statute of limitations.

*William R. Aycock & Associates, P.C.* (by *William R. Aycock*), for plaintiff.

*Donald Pailen*, Corporation Counsel, and *Kay D. Schloff* and *Dennis A. Mazurek*, Assistant Corporation Counsel, for defendant.

*Mager, Monahan, Donaldson & Alber* (by *Phillip G. Alber* and *Lita Masini Popke*), for cross appellee.

Before: CYNAR, P.J., and SHEPHERD and MARILYN KELLY, JJ.

MARILYN KELLY, J. The City of Detroit appeals from an order denying it summary disposition against Old Kent Bank-Southeast and granting Old Kent summary disposition against the city.

Old Kent cross appeals from an order denying its motion for summary disposition against Reliance Insurance Company and granting summary disposition to Reliance. We affirm the trial court's orders.

This case involves the competing claims of the surety (Reliance) and the lender (Old Kent) of a defaulting contractor (Morrison Company). Old Kent argues its rights prevail, as it was the first perfected secured creditor under the Uniform Commercial Code. Reliance asserts its rights are superior, as they predate Old Kent's under the doctrine of equitable estoppel.

In 1985, Reliance and Old Kent both were owed money by Morrison, as was the Internal Revenue Service. The city was indebted to Morrison. When the IRS levied against the city for the Morrison debt, the city paid the IRS. Reliance and Old Kent each claim the city should have paid it, instead.

I

In 1975, Reliance entered into an indemnity agreement with Morrison. It filed the agreement with the Secretary of State but not until October 18, 1984. Also in 1975, Morrison executed an agreement which gave Reliance a security interest in its accounts receivable and contract balances. Reliance perfected this security interest on January 7, 1985.

Morrison assigned all balances due it on its construction contracts to Reliance. Among the contracts Morrison entered into were three with the City of Detroit dated April 27, 1977, August 1, 1979, and December 4, 1981. Reliance issued payment and performance bonds on all three as surety for Morrison.

On August 2, 1979, Morrison and Old Kent

entered into a loan and financing agreement in which Morrison gave Old Kent a security interest in certain of its assets. Old Kent perfected a security interest in Morrison's goods and equipment on September 13, 1979. It perfected one in Morrison's accounts receivable on June 1, 1982. MCL 440.9101 *et seq.;* MSA 19.9101 *et seq.*

Morrison experienced financial problems during performance of the last of its three contracts with the city, and was unable to pay its subcontractors. In addition, it accrued debts for federal taxes in the amount of $985,000. From October 1, 1984, through December 13, 1985, Reliance paid $79,000 to complete Morrison's third contract with the city.

On December 12, 1984, Old Kent sent a certified letter to the city informing it that Morrison had assigned its accounts receivable to Old Kent. The letter stated that Old Kent was foreclosing on the accounts and instructed the city to pay any monies owing Morrison directly to Old Kent. It sent a second notice of assignment on November 29, 1985. Reliance also notified the city of its claim against Morrison. This was done by letter dated June 28, 1985.

On October 7, 1985, the IRS sent a notice of levy to the city. The city did nothing in response to the earlier letters from Old Kent and Reliance, but honored the IRS levy in full by paying $85,001.82 on October 14, 1985.

II

On April 2, 1986, Reliance filed an action in federal district court charging the IRS with wrongful levy. Old Kent was denied intervention under the statute of limitations. Reliance and the IRS settled, and the IRS paid Reliance $79,000.

Old Kent filed this action on January 18, 1986, alleging rights superior to those of Reliance in the funds paid out by the city. Old Kent relied on its status as the first perfected secured creditor. It moved for summary disposition against the city and Reliance. They in turn moved for summary disposition against Old Kent.

The trial court held that Reliance, as a surety, was equitably subrogated to the rights of Morrison. It held in addition that Reliance's rights prevailed over those of Old Kent. This is so even though Old Kent was a secured creditor having a prior perfected interest under Article 9 of the Uniform Commercial Code. The court relied on *National Shawmut Bank of Boston v New Amsterdam Casualty Co,* 411 F2d 843 (CA 1, 1969). It awarded Old Kent $6,001.82 ($85,001.82 – $79,000.00) against the city. The court held that Old Kent's letter to the city was sufficient notice of assignment under UCC § 9-318(3), MCL 440.9318(3); MSA 19.9318(3).

III

On appeal, Old Kent argues that the trial court erred in relying on *National Shawmut,* because it is based on Massachusetts law which is not controlling in Michigan. It contends that in this case the provisions of the UCC prevail over the theory of equitable subrogation. Its position is that, when Reliance perfected its security interest, it elected to use its legal remedy and waived its equitable one.

The issue was addressed by this Court in *American Oil Co v L A Davidson, Inc,* 95 Mich App 358; 290 NW2d 144 (1980). We held that a surety does not waive its right to assert equitable subrogation by perfecting an assignment of accounts. Assign-

ment rights are independent of those derived from equitable subrogation. *American Oil, supra,* p 361. Therefore, Reliance did not lose its ability to assert equitable subrogation by perfecting its security interest.

Reliance's rights under the doctrice of equitable subrogation predate Old Kent's security interest. The action of Old Kent in perfecting its interest under the UCC did not move it up in the line of priorities ahead of Reliance. In accord with *American Oil,* we conclude that the interest of Reliance in the disputed funds has priority.

The UCC at § 1-103 provides: "Unless displaced by the particular provisions of this act, the principles of law and equity . . . shall supplement its provisions." MCL 440.1103; MSA 19.1103. Moreover, a proposed UCC provision which would have brought sureties under Article 9 coverage was expressly rejected by its drafters. *American Oil, supra,* p 362.

The surety's priority is well established in common law and was not adversely affected by the adoption of the UCC. *American Oil, supra,* pp 362-363, and cases cited there. The trial court did not err in granting summary disposition to Reliance.

IV

The city attacks the trial court's award to Old Kent. It urges the court erred in finding that the Old Kent letter to the city dated December 12, 1984, was sufficient notice of assignment under the UCC.

The pertinent UCC section provides in part:

(3) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has

been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. [MCL 440.9318(3); MSA 19.9318(3).]

Notice under the ucc has been defined in MCL 440.1201; MSA 19.1201:

(26) A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice of notification when:

(a) It comes to his attention; or

(b) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

(27) Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his regular duties or unless he has reason to know of the transaction and that the transaction would be materially affected by the information.

Old Kent's certified letter was addressed to "Treasurer, City of Detroit." The envelope read: "City of Detroit, 2 Woodward Avenue, Detroit, Mich 48226." The letter stated:

Please be advised that your organization has been listed by The Morrison company as an account receivable in documents previously delivered to Peoples Bank & Trust Company (the "Bank"). Pursuant to various agreements executed by the Morrison Company granting the Bank a security interest in all of its accounts receivable, the Bank is presently proceeding to foreclose on those accounts receivable.

Consequently, please be advised that your organization should no longer transmit any funds, payments, or property to The Morrison Company in satisfaction of all or any portion of an outstanding account receivable balance. The Bank hereby demands that all such transmittals of funds, payments or property be delivered to the Bank at the above referenced address to my attention.

Please be advised that it is the position of the Bank that any transmittals of consideration by your organization to the Morrison Company after the date of receipt of this letter by your organization may result in double liability for your organization.

The city contends that the notice was insufficient. It was not sent to the proper office and did not reasonably identify the accounts which Morrison had assigned to Old Kent. The appropriateness of notice and the reasonableness of the identification of assigned accounts under § 9-318(3) are issues of first impression in Michigan.

The city argues that Old Kent's notice was sent to an improper office because it was received by the city's agent in Room 128 of the City-County building. We disagree. The facts of this case are similar to the facts of *Ertel v Radio Corp of America*, 261 Ind 573; 307 NE2d 471 (1974). When interpreting uniform laws such as the UCC, we may look to decisions from another state for guidance in construction of a provision. *Yamaha Motor*

*Corp, USA v Tri-City Motors & Sports, Inc,* 171 Mich App 260, 270; 429 NW2d 871 (1988).

The notice in *Ertel* was received by the defendant's employee who was authorized to sign receipts for certified mail. The *Ertel* court found irrelevant the fact that the accounting department never received the notice. The negligence of the defendant's employees could not be charged to the secured creditor. *Ertel, supra,* p 576.

We find this reasoning persuasive as applied to the facts of the instant case. The evidence indicates that both Morrison and the IRS had been paid by the City Treasurer's Department. It was reasonable to assume that Old Kent's notice should have been sent to the Treasurer's Department by Old Kent. It was also reasonable to assume the city's agent would send it to the Treasurer's Department once it got to the city offices at 2 Woodward Avenue.

Our decision might have been different had the letter and the envelope both been addressed simply: "City of Detroit, Detroit, Michigan." But here, the letter was directed to the Treasurer's Department. The negligence of the city's employees will not be charged to Old Kent. MCL 440.1201(27); MSA 19.1201(27).

We conclude also that the letter reasonably identified the rights which were assigned to Old Kent by Morrison. It stated that Morrison had granted Old Kent "a security interest in all of its accounts receivable." Old Kent explicitly demanded that all payments made in satisfaction of monies owing Morrison be transmitted to Old Kent. This was sufficient to constitute reasonable identification.

The city points out that the notice failed to inform the city's agent how many accounts and

what city departments were affected by the assignment. We hold that it did provide the city the notification it needed to initiate the necessary inquiries. Although preferable, it was not essential that the city's accounts with Morrison be identified in Old Kent's letter of notice to the city. What must be specified are not primarily the accounts but the claimant's entitlement to the accounts. The cases cited by the city as authority to the contrary are factually distinguishable from this case.[1]

V

Finally, the city contends that Old Kent does not have standing in this case, as it was barred from intervening in the federal action by the federal statute of limitations. This is actually a res judicata argument. Res judicata is inapplicable here, as the federal action did not involve the same parties as does this state court action. *Van-Deventer v Michigan National Bank,* 172 Mich App 456, 464; 432 NW2d 338 (1988).

Affirmed.

---

[1] See *S & W Trucks, Inc v Nelson Auction Service, Inc,* 80 NM 423; 457 P2d 220 (1969) (letter merely authorized payment but did not state assignment had actually been made), *Citizens State Bank of Corrigan v J M Jackson Corp,* 537 SW2d 120 (Tex Civ App, 1976) (purported notice of assignment consisted merely of notation on invoice to make check payable to bank and debtor, no sufficient notice of assignment), *First Trust & Savings Bank of Glenview v Skokie Federal Savings & Loan Ass'n,* 126 Ill App 3d 42; 81 Ill Dec 246; 466 NE2d 1048 (1984) (notification did not include explicit demand that payment be made to assignee), *Bank of Salt Lake v Corp of President of the Church of Jesus Christ of Latter-Day Saints,* 534 P2d 887 (Utah, 1975) (bank sent letter to specific employee of account debtor without ascertaining that the employee could reasonably be supposed to receive notice sufficient to bind account debtor, bank failed to prove notice of assignment), and *Progressive Design, Inc v Olson Brothers Mfg Co,* 200 Neb 291; 263 NW2d 465 (1978) (bank president had telephone conversation with and sent an uncertified letter to account debtor without retaining a copy, bank failed to prove sufficient notice of assignment).