ELLER v METRO INDUSTRIAL CONTRACTING, INC

Docket No. 241903. Submitted January 6, 2004, at Detroit. Decided March 9, 2004. Approved for publication April 15, 2004, at 9:00 A.M.

Metro Industrial Contracting was originally held liable for a judgment entered by the Wayne Circuit Court and that arose from a construction accident. Metro was fully indemnified by Power Process Piping, Inc., an indemnitor under an indemnity contract. Metro then filed a third-party complaint against third-party defendant Mid-American Gunite, Inc., seeking indemnification pursuant to an indemnification contract between Metro and Gunite. In a prior appeal, the Court of Appeals, CAVANAGH, P.J., and COOPER and KELLY, JJ., reversed the trial court's order of dismissal and held that Metro was entitled to indemnification from Gunite. *Eller v McLouth Steel*, unpublished opinion per curiam of the Court of Appeals, issued June 29, 2001 (Docket No. 220337). On remand to the trial court, Kaye Tertzag, J., judgment was entered against Gunite in the amount of $249,379.12, representing Gunite's indemnification liability. Also, Metro was awarded statutory prejudgment interest under MCL 600.6013, but accrual of interest was abated for the pendency of the prior appeal and during the current appeal. Gunite appealed as of right. Metro cross-appealed the trial court's computation of interest.

The Court of Appeals *held*:

1. The trial court did not err in denying Gunite's motion for summary disposition and in entering judgment in favor of Metro where Metro had already been fully indemnified by Power Process Piping, Inc. (PPP), a co-indemnitor. Metro signed indemnification contracts with both PPP and Gunite that contained identical indemnification clauses. Consequently, both were equally liable to indemnify Metro and to equally share the cost of indemnification.

2. Metro's indemnification claim against Gunite was not rendered moot by PPP's satisfaction of the full judgment amount against Metro. Metro's exposure to legal defense costs and liability on judgment triggered Gunite's indemnity obligation and PPP's full indemnification of Metro did not mean that Metro would be indemnified twice. PPP became equitably subrogated to Metro's rights against Gunite because PPP was not acting as a "mere

volunteer" when it provided a defense and paid Metro's entire share of the principal judgment pursuant to the indemnity agreement. Rather, PPP was performing a duty to protect its own interests by avoiding another potential action for breach of contract. In this regard, PPP became the real party in interest and although substitution would have been appropriate under MCR 2.202(B), the court rule did not require substitution. The trial court did not err in allowing Metro to proceed with its third-party claim.

3. The trial court did not err when it refused to allow Gunite to relitigate the jury's allocation of fault for the construction accident. Gunite was bound by the judgment because it had notice and an opportunity to participate in the principal action, and by moving for summary disposition to avoid its indemnity obligation after the Court of Appeals reversed the order of dismissal, Gunite pursued that legal strategy at its own risk.

4. MCL 600.6013 does not allow for abatement of interest for prejudgment appellate delay. Therefore, the trial court improperly ordered abatement of accruing interest during both the previous appeal and the current appeal.

Affirmed in part, reversed in part, and remanded for recalculation of interest.

*Vandeveer Garzia* (by *Hal O. Carroll*) for Metro Industrial Contracting, Inc.

*Secrest, Wardle, Lynch, Hampton, Truex & Morley PC* (by *Janet Callahan Barnes*) for Mid-American Gunite, Inc.

Before: HOEKSTRA, P.J., and SAWYER and GAGE, JJ.

PER CURIAM. This case involves Metro Industrial Contracting, Inc.'s (Metro), third-party action for indemnification against third-party defendant Mid-American Gunite, Inc. (Gunite), arising out of an accident at a construction site. In a prior appeal, this Court reversed the trial court's order dismissing Metro's third-party complaint against Gunite, concluding that, under the broad language of the indemnity contract

between Metro and Gunite, "Metro is entitled to indemnification from Gunite." *Eller v McLouth Steel*, unpublished opinion per curiam of the Court of Appeals, issued June 29, 2001 (Docket No. 220337). On remand, the trial court determined that Gunite was liable for the indemnification amount of $249,379.12, and entered judgment in that amount. Additionally, it awarded Metro statutory prejudgment interest under MCL 600.6013, but abated the accrual of interest while the case was previously pending on appeal and further directed that interest on the judgment was to be abated pending this appeal. Gunite now appeals as of right. Metro cross-appeals, challenging the trial court's computation of interest. We affirm in part, reverse in part, and remand.

Gunite first argues that the trial court erred in denying its motion for summary disposition and in entering judgment in favor of Metro where Metro already had been fully indemnified by Power Process Piping, Inc. (PPP), a co-indemnitor. Additionally, Gunite argues that Metro's indemnification claim was rendered moot by PPP's satisfaction of the full judgment amount against Metro. We disagree.

A trial court's decision concerning equitable issues is reviewed de novo, although its findings of fact supporting the decision are reviewed for clear error. *Webb v Smith (After Remand)*, 204 Mich App 564, 568; 516 NW2d 124 (1994). A trial court's decision to grant or deny summary disposition is also reviewed de novo. *Allen v Keating*, 205 Mich App 560, 562; 517 NW2d 830 (1994).

An issue is moot and should not be reached if a court can no longer fashion a remedy.[1] See *In re Contempt of*

---

[1] Metro argues that this issue is controlled by this Court's prior decision in this case. However, we reject this claim because this Court explicitly declined to address Gunite's "mootness" argument in the first appeal.

*Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003). In this case, the remedy sought by Metro is indemnification. Gunite's mootness argument is predicated on its claim that, because Metro has been fully indemnified by PPP, Metro may no longer pursue an independent claim for indemnification against Gunite. As to be discussed later, however, because PPP is equitably subrogated to Metro's claim against Gunite, and because it was not necessary that PPP be formally substituted for Metro, the trial court was not precluded from fashioning the remedy of indemnification in favor of Metro against Gunite.

Initially, we note that PPP and Gunite were both potentially liable to indemnify Metro under the terms of their respective written subcontract agreements with Metro that contained identical indemnification clauses. Where two or more insurance companies are in the same tier of priority—for example, both are primarily liable or both contain irreconcilable escape clauses—an insured's loss is to be apportioned or prorated among the insurance companies on the basis of policy limits. *Pioneer State Mut Ins Co v TIG Ins Co*, 229 Mich App 406, 415-416; 581 NW2d 802 (1998); *Secura Ins Co v Cincinnati Ins Co*, 198 Mich App 243, 246-247; 497 NW2d 230 (1993). By analogy, it follows that where PPP and Gunite signed identical indemnity provisions, both are equally liable to indemnify Metro as provided in the agreements, and the cost of doing so should be shared equally by both.

Furthermore, we observe that PPP's indemnification of Metro in full did not necessarily extinguish Gunite's "otherwise proven obligation of indemnity." See *Skinner v D-M-E Corp*, 124 Mich App 580, 589; 335 NW2d 90 (1983) (settlement of underlying claim did not discharge indemnity obligation); see also *Lieberman v*

*Solomon*, 24 Mich App 495, 501; 180 NW2d 324 (1970) (where partner paid debt of corporation with understanding that his partners would reimburse him a percentage of what he paid, acceptance of corporation's promissory note did not discharge indemnity obligation). Exposure to legal defense costs and liability on a judgment triggered Gunite's indemnity obligation, even if Metro was indemnified by PPP. But PPP's indemnification of Metro does mean that Metro will receive a windfall by being indemnified twice.

By satisfying Gunite's indemnification obligation, PPP became subrogated to Metro's rights against Gunite. As our Supreme Court explained,

> [e]quitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. It is well-established that the subrogee acquires no greater rights than those possessed by the subrogor, and that the subrogee may not be a "mere volunteer." [*Auto-Owners Ins Co v Amoco Production Co*, 468 Mich 53, 59; 658 NW2d 460 (2003), quoting *Commercial Union Ins Co v Medical Protective Co*, 426 Mich 109, 117; 393 NW2d 479 (1986) (opinion by WILLIAMS, C.J.) (citations omitted).]

"Equitable subrogation is a flexible, elastic doctrine of equity." *Hartford Accident & Indemnity Co v Used Car Factory, Inc*, 461 Mich 210, 215; 600 NW2d 630 (1999). Its application is to be determined on a case-by-case basis. *Id*. It has been applied to allow a no-fault insurance company to collect worker's compensation benefits from a self-insured employer, *Auto-Owners Ins Co*, *supra* at 55, to allow a surety to assert a contractor's right to payment, *Old Kent Bank-Southeast v Detroit*, 178 Mich App 416, 418, 420-421; 444 NW2d 162 (1989), to allow a security company's insurance carrier to assert a legal malpractice claim against the security

company's attorney, *Atlanta Int'l Ins Co v Bell*, 438 Mich 512, 521-524; 475 NW2d 294 (1991), and in other situations. Although caution is indicated, " 'the mere fact that the doctrine of subrogation has not been previously invoked in a particular situation is not a prima facie bar to its applicability.' " *Hartford Accident & Indemnity Co, supra* at 216 (citation omitted).

To avoid being a volunteer, a subrogee must be acting to fulfill a legal or equitable duty. *Id.* at 216. Thus, "[w]hen an insurance provider pays expenses on behalf of its insured, it is not doing so as a volunteer." *Auto-Owners Ins Co, supra* at 59. This is true even if the insurer's obligation was only secondary to another carrier's, so that it would not have been liable to pay benefits until the policy limits of the primary carrier were exhausted. See *Auto Club Ins Ass'n v New York Life Ins Co*, 440 Mich 126, 128-129, 132-133; 485 NW2d 695 (1992). The rationale is that an insurance company that pays a claim that another insurer may be liable for is "protecting its own interests and not acting as a volunteer . . . [and] [i]s entitled to invoke the doctrine of equitable subrogation." *Auto-Owners Ins Co, supra* at 60; see also *Auto Club Ins Ass'n, supra* at 132-133.

In the present case, PPP provided a defense and paid Metro's entire share of the principal judgment pursuant to its indemnity agreement. By doing so, PPP protected its own interests by avoiding another potential action for breach of contract. Therefore, contrary to Gunite's argument, PPP was not a volunteer. By satisfying Gunite's obligation to indemnify Metro, PPP became equitably subrogated to Metro's right to assert an indemnity claim against Gunite for half of Metro's share of the principal judgment.

Where a party pays the debt of another pursuant to an obligation, it becomes the real party in interest and

a substitution of parties may be appropriate. See *Neal v Neal*, 219 Mich App 490, 493-498; 557 NW2d 133 (1996) (insurer who paid legal defense costs pursuant to contract was entitled to intervene to recover mediation sanctions). However, the court rules allow a preexisting action to proceed with or without a substitution of parties. In particular, MCR 2.202(B) provides:

> If there is a change or transfer of interest, the action may be continued by or against the original party in his or her original capacity, unless the court, on motion supported by affidavit, directs that the person to whom the interest is transferred be substituted for or joined with the original party, or directs that the original party be made a party in another capacity. Notice must be given as provided in subrule (A)(1)(c).

Although the trial court could have required that PPP be substituted as a third-party plaintiff, it was not required to do so and it did not err in allowing Metro to proceed with its third-party claim against Gunite.

Gunite next argues that the trial court erred in refusing to allow it to relitigate the jury's allocation of fault for the underlying accident. We disagree. This is an issue of law that we review de novo. *Michigan Gas Utilities v Pub Service Comm*, 200 Mich App 576, 581; 505 NW2d 27 (1993).

Gunite does not cite any authority holding that an indemnitor is entitled to relitigate an underlying claim for which it had notice but chose not to participate. Rather, an indemnitor is bound by a judgment against its indemnitee if it has notice and an opportunity to participate.[2] *Id.* at 581. In this case, Gunite had both.

---

[2] An exception to this rule exists when there is a "showing of such circumstances of collusion between the parties as would amount to a fraud upon it." *Michigan Gas Utilities, supra* at 581. Although Gunite has alleged fraud and collusion, it relies only on the fact that PPP has

Although Gunite was within its rights to move for summary disposition and attempt to avoid its indemnity obligation, it pursued that legal strategy at its own risk. Cf. *People v Gonzalez*, 468 Mich 636, 644-645; 664 NW2d 159 (2003); *In re CR*, 250 Mich App 185, 199; 646 NW2d 506 (2002). Gunite could have made arrangements to participate in the principal action under a reservation of rights. It did not do so. Instead, after the order of dismissal was reversed on appeal, Gunite sought to avoid the risk inherent in its legal strategy—that of being bound by the judgment rendered in its absence—by relitigating parts of the underlying claim. The trial court did not err in refusing to allow Gunite to do so. See also *Pioneer State Mut Ins Co, supra* at 408-409, 416; *Skinner, supra* at 589.

In light of our resolution of the foregoing issues, we reject Gunite's additional claim that the trial court erred in failing to impose sanctions against Metro pursuant to MCR 2.114(D) and (E). Further, Gunite's argument that sanctions should be assessed against Metro because of misrepresentations it allegedly made in its first appeal should have been raised as part of that appeal and is not properly before us now. See MCR 7.216(C)(1)(b).

On cross-appeal, Metro argues that the trial court erred in denying its motion for a writ of execution and in entering a judgment instead. We disagree. The interpretation of a court rule is a question of law to be reviewed de novo. *Hinkle v Wayne Co Clerk*, 467 Mich 337, 340; 654 NW2d 315 (2002).

This Court's opinion in the prior appeal did not dispose of all remaining issues. In particular, although this Court determined that Metro is entitled to indem-

---

already indemnified Metro in full as support for this claim. This is insufficient to show fraud or collusion.

nification from Gunite, the amount of indemnification was not determined. Therefore, the trial court properly refused to treat this Court's opinion as a final judgment resolving all issues for which a writ of execution could issue. See *Schoensee v Bennett*, 228 Mich App 305, 317; 577 NW2d 915 (1998); see also MCR 7.215(E)(1) and (F)(1)(b).

Metro also argues that the trial court erred in holding that the prejudgment interest rate was to be based on the rate of interest for United States treasury notes in accordance with MCL 600.6013(8), rather than the twelve percent rate prescribed in MCL 600.6013(5). We disagree. Metro's claim is predicated on our holding that this Court's opinion in the prior appeal was a final judgment. Having rejected that claim, we conclude that no error occurred because the final judgment in this case is that of the trial court which was entered on May 23, 2002, and which is now on appeal. Thus, the case did not result "in a final, nonappealable judgment as of July 1, 2002." MCL 600.6013(6). Therefore, MCL 600.6013(6) controls and directs that interest is calculated under subsection 8.

Metro further argues that the trial court erred in abating the accrual of interest during the period of this appeal and the prior appeal. However, counsel for Gunite acknowledged at oral argument that the question of abatement of prejudgment interest due to appellate delay was resolved by *Morales v Auto Owners Ins Co (After Remand)*, 469 Mich 487; 672 NW2d 849 (2003). In *Morales*, the Court held that MCL 600.6013 "makes no exception for periods of prejudgment appellate delay." *Id*. at 491-492. Further, we conclude that the trial court improperly ordered that no interest was to accrue during the present appeal because the delay attendant to this appeal is properly attributed to

Gunite. Accordingly, the portion of the trial court's judgment abating accrued interest during both the prior appeal and this appeal is reversed, and we remand for recalculation of the appropriate amount of interest.

Affirmed in part, reversed in part, and remanded for recalculation of interest consistent with this opinion. We do not retain jurisdiction.