IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| NORTHWEST BUSINESS FINANCE, LLC, a Washington limited liability company, | ) ) ) ) | No. 33897-5-III |
| Appellants, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| ABLE CONTRACTOR, INC., also known as ABLE CONTRACTORS, INC., a Washington corporation; LINDA K. HOBSON individually and the marital community of LINDA K. HOBSON and JIM HOBSON, wife and husband; BANNER BANK; WESTERN CONSTRUCTION SERVICES, INC., a Washington corporation; SD DEACON OF OREGON, INC., a Washington corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

KORSMO, J. — Northwest Business Finance (Northwest) appeals, after an adverse

jury trial result, the trial judge's denial of its pretrial motion for summary judgment on

what it contends was a question of law for the bench. This appeal presents both a

procedural question concerning the scope of review as well as a question concerning the

reach of the secured transactions assignment statute, RCW 62A.9A-406(a). While we

agree with Northwest that we can review the summary judgment ruling, we otherwise

disagree with its contentions. Concluding that the trial court properly ruled that there

were factual questions precluding summary judgment and that the statute did not obligate

that every payment be made to Northwest, we affirm.

## FACTS

Northwest is in the factoring business, providing short-term financing to business

entities in need of alternative funding. One of its customers was Able Contractors, Inc.,

(Able) a sub-contractor specializing in commercial demolition and remodeling. In turn,

Able often worked for Western Construction Services, the respondent in this action.

Able executed an assignment of proceeds notification agreement in August 2007,

naming Northwest as the assignee of all account payments due to Able. The notification

indicated that Able had "sold and assigned the proceeds of accounts" to Northwest and

directed its customers "to remit any and all future payments due Able" directly to

Northwest. Clerk's Papers (CP) at 19. Able then provided notice of this assignment to

its customers on invoices factored by Northwest. A "UCC Financing Statement" was

filed September 27, 2007. It provided that all accounts and accounts receivable, as well

as all other assets, were collateral for Northwest's loans to Able. CP at 235.

Northwest and Able entered into a contract and security agreement in February

2008. The security agreement enabled Able to "obtain short-term financing by factoring,

selling, and assigning to [Northwest] acceptable accounts receivable at a discount below

2

face value." CP at 32. The term "acceptable account" was in turn defined to mean

Able's right to payment of an undisputed sum due from a customer following a bona fide

performance by Able. CP at 32-33. The agreement granted Northwest a security interest

in accounts receivable "presently existing or hereafter arising, now owned or hereafter

acquired by debtor." CP at 33. Able retained the right to transfer or assign accounts to

Northwest; those accounts would "be identified by separate and subsequent written

assignments on a form to be provided" by Northwest. CP at 34.

Able began factoring some of its accounts with Western in 2010. Western would

pay Able or Northwest depending on whether the invoice from Able carried a sticker

requiring that it be paid to Northwest. The assignment sticker stated that "this account"

had been assigned to Northwest and the invoice number should accompany payment in

order to ensure correct credit. CP at 152-56. In 2012, Able agreed to perform work in

Tumwater for Western. The contract anticipated payment would be made by "draws"

with Able submitting invoices for completed work as the project progressed.

Even before landing the subcontract, Able factored an invoice with Northwest, the

first of five such invoices it factored during the Tumwater project. Northwest paid Able a

total of $160,000 and sent each invoice to Western with the Notice of Assignment

attached. Independent of these invoices, Able also simultaneously submitted four other

invoices to Western for payment on the Tumwater project. One of them contained the

assignment notice and was paid to Northwest. The other three invoices, totaling $81,000,

lacked the assignment notice and Western paid them directly to Able.

Able stopped work on the Tumwater project in June 2012 and Western terminated

the contract. Able also defaulted on its obligations to Northwest. Northwest

subsequently brought suit against Able, Western, and several others. Except for Able and

Western, the cases against the other defendants all were resolved. Both Western and

Northwest eventually filed cross motions for summary judgment. Northwest argued that

the assignment agreement and its financing statement entitled it to all money Western

owed to Able. Western argued that it was only required to pay Northwest those accounts

that were identified as having been assigned to Northwest.

The trial court denied both motions, determining that there were material questions

of fact concerning the past practices of the parties, and the notice given Western that

precluded summary judgment. The case then proceeded to jury trial. Able did not appear

and defend; an order of default was entered against it. The jury subsequently returned a

verdict in favor of Western.

Northwest then appealed to this court, solely challenging the trial court's denial of

its motion for summary judgment.[1] A panel considered the case without oral argument.

---

[1] As a result of this posture, the trial record is not part of the appellate record in this case.

ANALYSIS

Northwest argues that the earlier invoice assignment notices and its financing statement were notice to Western and the world that no sums could be paid directly to Able, thereby entitling it to the $81,000 that Western paid Able for the Tumwater project. Western initially argues that the trial superseded the ruling on the summary judgment motion, precluding our review of that issue. On the merits, Western contends that the security agreement only extended to certain valid accounts and that its course of dealings with Able and Northwest only required it to pay Northwest those invoices bearing the assignment notice. We consider the procedural question presented by Northwest before turning to the issue presented by the appeal.[2]

*Consideration of Summary Judgment Ruling after Trial*

The initial question is whether this court can or should consider the summary judgment ruling after the case proceeded to trial and judgment. Because the issue presented is legal rather than factual in nature, we conclude that we can consider the contention.

---

[2] Western also seeks attorney fees for responding to a frivolous appeal, arguing that the challenged order is not reviewable. Since we agree that the issue may be considered, we decline to find the appeal frivolous and therefore deny the request for attorney fees.

No. 33897-5-III
*Nw. Bus. Fin. v. Able Contractor, Inc.*

Summary judgment is proper when there are no material facts in dispute and the trial court can resolve the issue presented as a matter of law. CR 56(c); *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). When summary judgment is denied due to the existence of material facts in dispute, appellate review is appropriately focused on the sufficiency of the evidence presented at trial rather than the trial court's summary judgment ruling. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993). The reason for this approach is that it allows appellate courts the opportunity to review evidentiary sufficiency on the basis of the most complete factual record. *State v. Jackson*, 82 Wn. App. 594, 607-09, 918 P.2d 945 (1996).

An exception to this general approach exists for the situation where denial of summary judgment turned on a substantive legal issue rather than a factual dispute. *Kaplan v. Nw. Mut. Life Ins. Co.*, 115 Wn. App. 791, 799, 65 P.3d 16 (2003). In that instance, the appellate court may review the ruling despite subsequent entry of a final judgment if the issue is solely one of substantive law. *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wn. App. 66, 79, 248 P.3d 1067 (2011). Review of legal rulings is de novo. *Kaplan*, 115 Wn. App. at 800.

Northwest contends that it established at summary judgment its entitlement to the payments, thus creating a legal issue that we can review despite the trial verdict. Because it does not challenge the sufficiency of the evidence to support the jury's verdict,

6

Northwest can only prevail in this appeal if its substantive legal argument is correct. We therefore turn to that question.

*Notice of Assignment and Financing Statement*

The UCC Financing Statement on file provided that it covered "all" accounts and accounts receivable "now owned or hereafter acquired by debtor." CP at 235. Similarly, the 2007 assignment notice, apparently[3] attached to most of the invoices provided to Western, claimed that all of Able's accounts had been assigned. CP at 19. Northwest argues that by statute these documents sufficiently told Western the payments owed Able for the three invoices that lacked assignment statements should go to Northwest and that it was wrong for the court and Western to concern themselves with the terms of the security agreement. We do not believe the statute supports Northwest's claims.

The purpose of statutory construction is to give effect to the intent of the legislature. *Roberts v. Johnson*, 137 Wn.2d 84, 91, 969 P.2d 446 (1999). Construction is only necessary when a statute is unclear or ambiguous. A statute that is clear need not be construed. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). "Statutes must be interpreted and construed so that all the language used is given effect, with no portion

---

[3] The affidavit supporting the motion for summary judgment includes a copy of the assignment and suggests (CP at 148, ¶ 10) that the notice was sent along with the invoices containing the sticker assigning "this account" to Northwest. The invoices are also included in the affidavit and none of them have the 2007 assignment attached. Assuming the notice was included with the invoices, this at most created an ambiguity to be resolved at trial whether "all" included more than just the invoices bearing the assignment sticker.

No. 33897-5-III
*Nw. Bus. Fin. v. Able Contractor, Inc.*

rendered meaningless or superfluous." *Whatcom County v. City of Bellingham*, 128

Wn.2d 537, 546, 909 P.2d 1303 (1996). Issues of statutory construction are reviewed de

novo. *Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 298, 149 P.3d

666 (2006).

In executing the sale of an account, the assignee steps into the shoes of the

assignor and takes the assignor's right to payment. *Kendrick v. Davis*, 75 Wn.2d 456,

463, 452 P.2d 222 (1969). The assignee acquires no greater rights than the assignor had

at the time the account debtor received the notice of assignment. *Id.*

Primarily at issue here is RCW 62A.9A-406(a), which in part reads:

> [A]n account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor *until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee.* After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

(Emphasis added.)[4]

The next subsections of the statute also inform on this issue. RCW 62A.9A-

406(b) lists the circumstances in which notification is ineffective. It includes the

circumstance where the notification "does not reasonably identify the rights assigned."

---

[4] The parties agree that here Western is the account debtor, Able is the assignor and Northwest is the assignee.

8

RCW 62A.9A-406(b)(1). The account debtor also is permitted to require the assignee to prove the assignment has been made. RCW 62A.9A-406(c).

Read together, these provisions establish that a debtor need only make payment when notified that the particular "amount due" has been assigned and needs to be paid to the assignee. A general notification that the assignee claims a security interest in "all" accounts receivable or that they are payable to the assignee does not "reasonably identify the rights assigned."[5] A general notification is insufficiently specific to satisfy the requirements of the statute.[6] Although there is a dearth of relevant Washington authority, other jurisdictions confirm this reading of the plain language of the statute. Once notified of the assignment, account debtors may not discharge their obligations by paying the assignor; they must pay the assignee. *Old Kent Bank-Se. v. City of Detroit*, 178 Mich. App. 416, 421-22, 444 N.W.2d 162 (1989). The notification, however, must reasonably identify the assigned rights or amount due. *Warrington v. Dawson*, 798 F.2d 1533, 1539

---

[5] The financing statement, which merely lists all of the assignor's property which the assignee is claiming as collateral, does not itself operate as an assignment of any of the listed property accounts. It provides notice to others that the property is collateral, but does not assign any of that property to the assignee. CP at 235. The debtor's obligation under subsection 406(a) is to pay only accounts that have been assigned, not every account that has been secured.

[6] We are not saying there can never be a blanket claim for all amounts owed by a particular debtor to the assignor, but the assignment will need a more specific statement than claiming all accounts owed by anyone to the debtor.

9

(5th Cir. 1986). A statement that "all" accounts have been assigned does not reasonably identify an account for the debtor.[7]

Accordingly, we conclude that RCW 62A.9A-406(a) requires notice that each identified account receivable had been assigned before the debtor had the obligation to pay the amount owed to the assignee. Northwest failed to establish at summary judgment that it had notified Western to pay it all amounts owed Able.

Instead, the trial court here correctly concluded that material factual disputes required trial on this claim. In particular, the stickers attached to the factored account invoices expressly told Western that "this account" had been assigned and that payment should reference the invoice number in order to receive proper credit. It thus suggested that only the specific invoice had been assigned. Western was never told that all of the payments owed Able on the Tumwater project needed to be paid to Northwestern. Rather, the documents and course of dealing reasonably could lead Western to understand the notices given to it as requiring payment to either Northwest or Able on a case-by-case basis depending on the directions given it. Whether Northwest had

---

[7] The 2008 security agreement established that only "acceptable accounts" were assigned by Able to Northwest and that Northwest retained the right to decide which accounts to purchase. CP at 32, 34. Northwest argues that Western was not aware of the security agreement and did not know that only some accounts had been purchased by Northwest. This argument fails to explain why Western was bound to pay "all" accounts even if Northwestern was not entitled to all of them under the terms of its agreement with Able. In effect, Northwestern reads the assignment notice as giving it greater rights than the security agreement did.

No. 33897-5-III
*Nw. Bus. Fin. v. Able Contractor, Inc.*

reasonably identified the accounts assigned to it presented a question for the trier of fact

to resolve at trial.

The judgment is affirmed.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.

11