# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| GRAVITY  SEGREGATION,  LLC., a  Utah Limited Liability Company,<br><br>Respondent,<br><br>v.<br><br>JERRY C. REEVES, and THE UNKNOWN SPOUSE OF JERRY C. REEVES, and GAYLE REEVES, and STANLEY C. KENNEDY ENTERPRISE, INC., DBA KENEDY CONSTRUCTION COMPANY AND KENNEDY RESTORATION, an Oregon Corporation, and SUNTRUST BANK, and ALL OTHER PERSONS OR PARTIES UNKNOWN CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE REAL ESTATE DESCRIBED IN THE COMPLAINT,<br><br>Appellant. | No. 52425-2-II<br><br><br>UNPUBLISHED OPINION |

LEE, C.J. — Jerry C. Reeves purchased property from Charles and Mary Lou Babitzke.  As part of the transaction, Reeves signed a promissory note and deed of trust.  After Reeves defaulted, the Babitzkes' assigned their rights under the promissory note and deed of trust to Gravity Segregation, LLC (Gravity).  Gravity filed a foreclosure action against Reeves.  After a bench trial, the court entered a judgment and decree of foreclosure against Reeves.

Reeves appeals the trial court's Findings of Fact and Conclusions of Law and Judgment and Decree of Foreclosure.  Reeves argues that the trial court erred by 1) denying Reeves' motion to dismiss under CR 41 and ruling that Gravity was entitled to judgment even though Gravity

based its rights on a deed of trust that did not contain a legal description of the real property at issue, 2) granting Gravity's motion to amend its complaint to add a claim of replevin, 3) ruling that the replevin claim was not barred by the statute of limitations, 4) concluding that Gravity had the power to enforce the promissory note because the Babitzkes never had possession of the original note, 5) finding that the obligation under the promissory note was $1,000,000 plus the PNC Bank mortgage, and 6) denying Reeves' request for a continuance when his counsel had joined the case one week before trial.

We affirm the trial court's Findings of Fact and Conclusions of Law and Judgment and Decree of Foreclosure.

## FACTS

### A. BACKGROUND

In 2006, Charles and Mary Lou Babitzke (the Babitzkes) agreed to sell to Jerry Reeves two tax parcels they owned located at 1601 Guild Road. At the time of the sale, one of the parcels was subject to a first position deed of trust in favor of PNC Bank. Reeves agreed to assume and pay the PNC Bank debt as part of the agreement with the Babitzkes.

On July 21, 2006, Reeves executed a promissory note (July 2006 Note) in favor of the Babitzkes at a closing where Reeves and the Babitzkes were present. Also on July 21, the Babitzkes and Reeves signed a Deed of Trust (July 2006 Deed of Trust), for the two tax parcels. This deed of trust included a legal description of the two properties and was recorded on the same day it was signed.

The July 2006 Note was amended, restated, and recorded on November 13, 2006 (November 2006 Note). The November 2006 Note states,

2

> The undersigned promises to pay to the order of Charles and Mary Lou Babitzke the amount of **$900,000.00** excluding the $100,000.00 paid on July 21, 2006. The total purchase price is $1,000,000.00. The Undersigned further agrees and promises to assume payment responsibility for the mortgage currently on the property in the amount of $194,000.00. The mortgage can be paid off at any time. If the Undersigned elects to pay off all or any portion of the Note above the monthly payments assumed herein, that payment amount shall both reduce the amount of the outstanding Note and be credited against the upcoming $100,000.00 annual payment.

Trial Ex. 3 at 1 (November 13, 2006 Promissory Note).[1] At the same time, Reeves executed an amended deed of trust (November 2006 Deed of Trust). This deed of trust did not contain a legal description. The November 2006 Deed of Trust was recorded on November 13, 2006, along with a "Corrected Statutory Warranty Deed Replacing 'Deed of Trust' dated July 31, 2006 Auditors Number 3305063" (Corrected Statutory Warranty Deed). Trial Ex. 11 at 1 (some capitalization omitted) (boldface omitted).

On March 30, 2007, the Corrected Statutory Warranty Deed and copies of the November 2006 Note and November 2006 Deed of Trust were all re-recorded together along with a document titled "Exhibit A" which set forth the full legal description of the two properties that the Babitzkes sold to Reeves.

Reeves made the $100,000 down payment in 2006 and another $100,000 payment in 2007. Reeves failed to make any additional $100,000 payments after 2007. Reeves also stopped making the mortgage payments to PNC Bank. As a result, PNC Bank foreclosed on the parcel with the mortgage in 2015.

On March 17, 2016, the Babitzkes assigned, transferred, and conveyed in writing, the July 2006 Note, the November 2006 Note, and the November 2006 Deed of Trust to Gravity. Because

---

[1] All trial exhibits are included in the Supplemental Clerk's Papers.

3

the Babitzkes did not have physical possession of the original notes or deeds of trust at the time of the assignment, the Babitzkes signed a Lost Instrument Affidavit, which stated, in relevant part:

1. The original Promissory Note dated November 13, 2006, in the stated principal amount of $900,000.00, executed by Jerry C. Reeves, P.E., and payable to the order of Charles and Mary Lou Babitzke (the "Note"), has been lost, and was lost at the time it was in my custody, care and control.

. . . .

3. At the time the Note was lost, Charles and Mary Lou Babitzke were collectively the holder of the Note, and the Note, nor any part thereof, had not been sold, assigned, conveyed transferred, or endorsed to any other person or entity.

Trial Ex. 6 at 1 (Lost Instrument Affidavit).

B. GRAVITY'S FORECLOSURE ACTION

Gravity filed a Deed of Trust Foreclosure Complaint against Reeves on April 11, 2016. Gravity claimed that under the promissory notes and deeds of trust, Reeves agreed to pay the principal sum of $900,000 in annual $100,000 installments until fully paid but had defaulted. Gravity requested a monetary judgment on the balance that Reeves owed on the promissory notes and deeds of trust, as well as reasonable attorney fees and costs. Attached to the complaint were copies of the July 2006 Note, the July 2006 Deed of Trust, the November 2006 Deed of Trust, the Corrected Statutory Warranty Deed, and the Assignment of Deed of Trust/Mortgage and Notice of Interest from 2016.

During discovery, Gravity served Reeves with Plaintiff's First Request for Interrogatories and Production. Reeves responded that the Babitzkes had given him the original promissory note on their own volition, without Reeves' request and the Babitzkes chose to no longer enforce it sometime in 2014. Reeves further responded,

4

Defendant JERRY C. REEVES, in response to the Interrogatories above relies on no new documents other than the original Promissory Note. Attaching a copy of the same would be useless. Plaintiff is free to make arrangements to inspect same at the offices of Defendant JERRY C. REEVES at a later date.

Clerk's Papers (CP) at 370.

C.      BENCH TRIAL

The case was tried to the bench on March 8, 2018, almost two years after Gravity filed its complaint.[2]

1.      Request for Continuance

On the first day of trial, Reeves asked for a "limited continuance."  3 Verbatim Report of Proceedings (VRP) (March 8, 2018) at 4.  Reeves' attorney had filed an appearance on March 1, 2018, one week before the start of trial.  Reeves' attorney had found a number of issues that he wanted to brief to "do my job to the Court."  3 VRP (March 8, 2018) at 5.  Reeves stated that Gravity could proceed with its case that day, but requested one day within the next two or three weeks to put on his case-in-chief.  Reeves also argued that Gravity had "shifted its case" over the last week. 3 VRP (March 8, 2018) at 6.  For example, Gravity included an expert witness, changed the "dollar amount that they are seeking from six hundred and something to seven hundred and something," and submitted the exhibit list at the last minute.  3 VRP (March 8, 2018) at 6.

Gravity argued that Reeves was a sophisticated litigant and would have known he needed counsel before this day.  Further, Gravity had two people who had flown in from Utah for this case and were ready to proceed with several witnesses that day.  Gravity further argued that allowing

---

[2] At trial, the parties stipulated that $200,000 of debt was uncollectable due to the statute of limitations.

No. 52425-2-II

Reeves to present his case-in-chief weeks after Gravity's case would "give them the unfair advantage by giving them weeks to then prepare their defense to that." 3 VRP (March 8, 2018) at 8.

The trial court ruled,

> [B]ased on what I've heard and based on the fact that this case has been—it was filed in 2016 . . . I agree, it appears that Mr. Reeves is a sophisticated litigant. The Pretrial brief was filed on February 15th. I don't see any basis to continue the case, either in whole or in part. We need to proceed, because I think it would work significant hardship to the Plaintiff to have to bifurcate this trial, and I don't think there's a valid reason. Obviously, you know, this is not a criminal case. The analysis is totally different, and Mr. Reeves has had ample notice of this trial date and should have been prepared today—with or without counsel should have been prepared today. So, we will proceed today.

3 VRP (March 8, 2018) at 9-10.

    2.    Witness Testimony

Charles Babitzke testified that he and his wife owned the property at issue. This property included two parcels of land. The first parcel had a house on it. The Babitzkes purchased the second parcel on a mortgage and had paid it off. The Babitzkes agreed to sell both parcels to Reeves in 2006. When the Babitzkes entered into discussions about selling the property to Reeves, there was a mortgage with PNC Bank on the parcel with the house on it. The Babitzkes agreed to sell Reeves the parcel with the PNC Bank mortgage, and if Reeves made the mortgage payments, they would tie the other parcel into the sale.

In July 2006, Reeves signed a promissory note and a deed of trust at the title company in Woodland. Reeves left with the originals of the two documents, stating that he had to take them to the courthouse to be recorded. Reeves never gave the originals back to the Babitzkes, even

6

though he said he would. Charles[3] did not think that keeping the originals was legally important. He testified, "I never thought it was any concern of mine, it was just taken care of." 3 VRP (March 8, 2018) at 50. Charles' understanding of the importance of having the originals changed two or three years prior to the trial.

The Babitzkes and Reeves signed new documents in November 2006. Reeves had told them that some changes needed to be made, but Charles did not remember what those changes were. These new documents were signed and notarized at the bank. These three new documents were the November 2006 Note, November 2006 Deed of Trust, and Corrected Statutory Warranty Deed. Reeves told the Babitzkes that they needed to sign these documents to protect the property from Reeves' ex-wife. Reeves left the meeting with the originals to have them recorded at the courthouse. Reeves told them that he would give them a copy, but Reeves never did.

In March 2016, because the Babitzkes could not find the November 2006 Note, the Babitzkes signed a Lost Instrument Affidavit. This affidavit stated that the November 2006 Note had been lost.

Charles also testified that Reeves made a down payment of $100,000 and another $100,000 payment in 2007. Reeves did not make any payments after 2007. Reeves made the payments on the PNC mortgage for only between one and three years. The Babitzkes paid the PNC mortgage themselves so the payments would not fall behind. They continued requesting payments from Reeves up until this lawsuit was filed. Reeves would respond to their requests by stating that he

---

[3] Because Charles and Mary Lou Babitzke share the same last name, we use their first names when referring to them individually for clarity. We mean no disrespect by doing so.

did not have any money. PNC brought a foreclosure action against the Babitzkes in 2014 or 2015. The Babitzkes did not have the funds to contest the action, so PNC foreclosed on the parcel.

The Babitzkes and Reeves were friends, and Reeves used to visit the Babitzkes' home almost every other week. They had a meeting in 2014. Charles denied that he forgave the debt at this meeting, as claimed by Reeves.

Mary Lou testified that they agreed to a sales price of $1,000,000 with Reeves. When they originally spoke to Reeves, they owed $194,000 to PNC for the parcel with the house, and Reeves agreed to assume the PNC debt in addition to the $1,000,000.

Mary Lou also testified that after Reeves signed the July 2006 Note and July 2006 Deed of Trust, Reeves took the original documents to the courthouse. Reeves stated that he would bring them back after he was finished, but Mary Lou did not recall receiving the originals back from Reeves. She knew it was important to have the originals but just figured that Reeves would give them back.

Mary Lou further testified that new documents were signed in November 2006 to replace the July 2006 documents. She testified, "[Reeves] said that his attorney said he did something wrong on them and they had to be redone." 3 VRP (March 8, 2018) at 98. Mary Lou believed that they maintained the right to own and control the properties until Reeves paid off the promissory note.

After the Babitzkes and Reeves signed the new documents in November 2006, Reeves took the originals to the courthouse. Reeves stated that he would return them to Mary Lou. Reeves never returned the originals.

In October 2015, Reeves wrote a check for $2,600 to the Babitzkes. This was his last payment. The Babitzkes never forgave the debt that Reeves owed to them.

Mary Lou signed the Lost Instrument Affidavit because she could not find the original documents. Mary Lou believed that Reeves had returned both Notes to her because "[she] always believed that [Reeves] did what [Reeves] would say he would do." 3 VRP (March 8, 2018) at 121.

The Babitzkes tried to get a loan and were informed that Gravity was interested in purchasing the promissory note. David Knudson, president and part owner of Gravity, testified that the Babitzkes' property was "a property that we acquired and transacted a loan/acquisition on from the Babitzkes." 3 VRP (March 8, 2018) at 146. Knudson also testified that he understood that the original amount of debt that Reeves promised to pay the Babitzkes was $1,000,000 plus the PNC mortgage loan. Reeves had paid the Babitzkes $200,000. After the payments were made, Reeves owed approximately $800,000 on the promissory note. The Babitzkes gave Gravity copies of the original transaction documents from 2006. Gravity understood that the original documents were lost.

Terry Michael Woodruff, a title officer, testified about a document from March 2007. This document was a corrected statutory warranty deed. The corrected statutory warranty deed was recorded because there was no legal description on the original deed of trust. The parties added legal descriptions of the two parcels. The Babitzkes assigned the July 2006 Deed of Trust, the November 2006 Deed of Trust, and the November 2006 Note to Gravity. Reeves owns the remaining parcel that PNC did not foreclose on, but Gravity has a lien on it.

Benjamin Wolff, an attorney, testified that he had formerly represented the Babitzkes for their foreclosure defense against PNC. Wolff had exchanged emails with Reeves in 2015. During

this time, Reeves stated that he was getting money together to make a payment to the Babitzkes. Reeves made that representation a number of times.

Reeves testified that he has been in real estate for more than 30 years. He had been part of more than 20 foreclosure lawsuits. The sales price for the parcels was $1,000,000 including the PNC debt. Reeves also testified that he had a meeting with the Babitzkes at their house in 2014. In this meeting, Reeves testified that the Babitzkes stated the following, "'Business is business' and 'We waited too long' and 'It's our fault' and 'We're done.'" 4 VRP (March 8, 2018) at 195.

Reeves claimed that the Babitzkes forgave the debt. However, Reeves admitted that the Babitzkes did not specifically say that they were forgiving the debt, and Reeves did not have a document memorializing any debt forgiveness from the Babitzkes. Instead, Reeves claimed that the Babitzkes gave Reeves the original operating Note at this meeting by leaving it in a file on the table. But Reeves admitted that the Babitzkes did not say they were giving Reeves the Note during their discussions.

Reeves admitted that in 2015, he told the Babitzkes' attorney, Ben Wolff, that he would pay the Babitzkes $100,000 on the debt owed. Reeves testified that was because the Babitzkes were friends and he wanted to help them out and "that was more of a moral issue, in [his] mind, than a legal issue." 4 VRP (March 8, 2018) at 207.

Reeves also testified that at the 2014 meeting, the Babitzkes stated that they were not going to pursue any legal remedies against Reeves because they thought any remedies were untimely. Reeves further testified that he made a payment to the Babitzkes of $2,600 in October 2015 for their grandson's cleanup of the property. Reeves stated that he did not make this payment toward

10

the debt owed to the Babitzkes and did not do anything to protect himself from an implication that he was still paying on the loan "because it was—it was over." 5 VRP (March 9, 2018) at 49.

3.       Complaint Amended to Add Claim of Replevin

On March 9, 2018, after closing arguments, the trial court ordered that Reeves surrender possession of the original November 2006 Note and that the Clerk of Court retain possession over the November 2006 Note. On the same day, Gravity filed a Motion to Amend Complaint under CR 15(b). Gravity requested "leave to amend its complaint to add a cause of action for replevin against defendant Reeves seeking to have him turn over the original promissory note." CP at 78. Gravity argued that there would be no prejudice to Reeves because the two relevant factual inquires (i.e., who the rightful owner of the original note was and was the rightful owner of the original note in possession of it) were fully covered in discovery and trial.

At a hearing on April 17, before judgment was entered, the trial court ruled that the only reasonable inference to be drawn from all the evidence is that Reeves had the November 2006 Note from the 2006 meeting onward. The trial court found Mary Lou's testimony credible that Reeves took the November 2006 Note and stated he would bring it back, but he did not. The trial court also found Reeves' version of the events that the Babitzkes handed the November 2006 Note back to him in 2014 was not credible. The trial court further ruled that the statute of limitations for replevin had not run.

> [T]he Babitzkes . . . essentially handed [the Note] to, or allowed Mr. Reeves to leave with it, for what was not a wrongful—for him—he wasn't going to be doing something wrongful with it. That was not their understanding, was that he would do anything wrongful with the Note. They thought he was going to return the Note.
>
>        . . . .

11

> . . . [W]hen we come up to after the filing of this case where the Babitzkes say, I'd like to sue on the installments under this Promissory Note that I'm still able to sue on because the statu[t]e hasn't run, and that's the six installments that were the subject of our—our hearing last time, I need the Note back. And he says, "Nope, I'm not going to give you the note back." Well, that's a wrongful act, and that's when it became, essentially, conversion or exerting unauthorized control over the Note.

1 VRP (April 17, 2018) at 67, 69. The court granted Gravity's motion to amend the complaint to add a cause of action for replevin.

4. Motion to Dismiss for Lack of Legal Description

On June 26, Reeves filed a motion to dismiss, arguing that because the November 2006 Deed of Trust did not have a legal description, it was invalid. The trial court denied the motion because it was untimely under CR 41(b)(3).

5. Findings of Fact and Conclusions of Law

The trial court then entered its findings of fact and conclusions of law on June 26, 2018. The findings of fact state, in relevant part:

> 5. At the time of the 2006 sale, one of the parcels was subject to a first position deed of trust in favor of PNC Bank. Mr. Reeves agreed to assume and pay that debt as part of the agreement with the Babitzkes. In addition, Mr. Reeves agreed to pay the Babitzkes ONE MILLION AND NO/100 dollars ($1,000,000.00) million for the property on the following terms: $100,000 down and $100,000 per year payable over the next nine years. These payments to the Babitzkes were to be made in addition to the payments that Reeves agreed to pay to PNC Bank to cover the existing mortgage.
>
> . . . .
>
> 9. On March 30, 20[0]7, the "Corrected Statutory Warranty Deed Replacing 'Deed of Trust' Dated July 31, 2006 Auditors Number 3305063," and copies of the November 2006 Note and November 2006 Deed of Trust . . . were all re-recorded together along with a document titled "Exhibit A" setting forth the full legal description of the property the Babitzkes sold to Mr. Reeves.

. . . .

11. Mr. Reeves promised to take the original notes, deeds of trust and other transactional documents for recording and, after recording, bring the original documents back to the Babitzkes. The Babitzkes agreed to this. Mr. Reeves took the aforementioned documents with him.

12. However, Mr. Reeves did not return the original notes, deeds of trust and other transactional documents to the Babitzkes after he recorded them. The Babitzkes never asked for them back because they did not realize that it might be important for them to have physical possession of the original documents and it appears that they eventually forgot that Mr. Reeves had the originals. From November 2006 through the filing of the complaint in this case, neither the Babitzkes nor Gravity or any attorney or agent acting on their behalf asked for any original documents back.

. . . .

15. . . . The Babitzkes did not learn or remember that Mr. Reeves had the original November 2006 Note until after this litigation started. There is no evidence that Plaintiff knew that Mr. Reeves had possession of the November 2006 Note until after this litigation started.

. . . .

19. The court finds that Mr. Reeves' testimony about the events of the alleged 2014 meeting was not credible and that the Babitzkes' testimony was credible. Mr. Reeves' version of the events does not ring true and the Court does not believe that the Babitzkes said those things to Mr. Reeves in 2014 or gave him back the promissory note in 2014. . . .

20. The court finds that Mr. Reeves' testimony regarding the alleged 2014 meeting is not credible given the evidence offered against him at trial.

. . . .

23. One reasonable inference that can be drawn from the totality of the evidence in this case is that Mr. Reeves engaged in a concerted scheme to build a friendship with the Babitzkes, earn their affinity and trust, and then play upon that friendship by repeatedly breaking promises to pay them, stringing them along so that the statute of limitations on the Babitzkes' ability to enforce the note would expire. The Court draws this inference and finds the behavior of Mr. Reeves in this case unconscionable.

24. Under the totality of the circumstances, it would be inequitable to allow Mr. Reeves to maintain possession of the original November 2006 Note.

. . . .

26. Mr. Reeves obtained physical possession of the original promissory note(s) by fraud or violation of the Babitzkes' confidence and trust, which they reposed in him and/or he obtained physical possession of the original promissory note(s) in an unconscientious manner.

27. Mr. Reeves did not make all the payments required under the November 2006 Note. . . .

28. Mr. Reeves paid a total of $203,743.94, leaving $796,256.06 due and owing under the promissory note(s), excluding costs and attorney's fees. However, the parties stipulated at trial that $200,000 of the debt is uncollectable due to the statute of limitations.

29. That there is now due and unpaid the principle balance of FIVE HUNDRED NINETY-SIX THOUSAND TWO HUNDRED FIFTY-SIX Dollars and 06/100 ($596,256.06) to the date of the decree.

30. No other suit or action has been instituted or is now pending upon said notes or to foreclose the deeds of trust. However, there was an action under Cowlitz County Superior Court Cause No. 15-2-00284-9 for the foreclosure of a superior deed of trust on Parcel A by PNC Bank National Association and, therefore, Parcel A is removed from the scope of this action and the deeds of trust described herein. Any judgment in this action is for unpaid amounts that Mr. Reeves owed to the Babitzkes and Gravity, not to PNC Bank National Association.

CP at 258-60, 262-64, 266-67. The trial court's conclusions of law state, in relevant part:

2. Plaintiff is the owner and rightful holder of the November 2006 Note and corresponding deed of trust.

3. The debt represented by the November 2006 Note was never forgiven or discharged by the Babitzkes or anyone else.

4. The Babitzkes did not take any action or actions that could be construed as an intentional, voluntary discharge of the November 2006 Note.

> 5.    The Babitzkes' assignment of the November 2006 Note and accompanying deed of trust was proper. Although the Babitzkes lacked physical possession of the Note at the time of the assignment, they were the owners and rightful holders of the note. . . .
>
> 6.    Plaintiff is entitled to replevin of the original November 2006 Note. Plaintiff is the owner and rightful holder of the Note and is entitled to possession.
>
> 7.    Plaintiff's replevin claim is not barred by the statute of limitations.
>
> . . . .
>
> 9.    Plaintiff is entitled to enforce the November 2006 Note under RCW 62A.3.301 and has the power to do so as the owner and holder of the note.
>
> 10.    Plaintiff is entitled to judgment against Mr. Reeves in the sum of FIVE HUNDRED NINETY-SIX THOUSAND TWO HUNDRED FIFTY-SIX Dollars and 06/100 ($596,256.06) . . . .
>
> 11.    In addition to judgment in the amount of $596,256.06, the Plaintiff is entitled to judgment for such other sums advanced under the terms of the November 13, 2006 Deed of Trust for taxes, assessments, insurance premiums, liens, encumbrances or other charges against the property and for the further sum of its reasonable attorney's fees and litigation costs in an amount to be determined by separate application and affidavit, together with the Plaintiff's costs and disbursements herein, and post-judgment interest thereon at the statutory rate of twelve percent (12%) per annum.

CP at 268-70.  The trial court entered the Judgment and Decree of Foreclosure, listing the amount

of judgment as $596,256.06, the attorneys' fees and costs as $74,790.14, and the total judgment as

$671,046.20, with a 12% post-judgment interest rate per year.

Reeves appeals.

## ANALYSIS

### A.    LEGAL DESCRIPTION

Reeves argues that the trial court erred by granting Gravity a judgment when Gravity relied

on a deed of trust with no legal description of the real property.  We disagree.

Reeves moved to dismiss the same day the trial court entered its findings of fact and conclusions of law. The trial court ruled that Reeves' motion was untimely under CR 41(b)(3).

CR 41(b)(3) states,

> *Defendant's Motion After Plaintiff Rests*. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

"'Interpretation of a court rule is a question of law, subject to de novo review.'" *North Coast Elec. Co. v. Signal Elec., Inc.*, 193 Wn. App. 566, 571, 373 P.3d 296 (2016) (internal quotation marks omitted) (quoting *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 821, 225 P.3d 280 (2009), *review denied*, 169 Wn.2d 1012 (2010)). "Court rules are interpreted in the same manner as statutes. If the rule's meaning is plain on its face, we must give effect to that meaning as an expression of the drafter's intent." *Jafar v. Webb*, 177 Wn.2d 520, 526, 303 P.3d 1042 (2013). Where a court rule is ambiguous, we look to the drafter's intent by "'reading the rule as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule.'" *Id.* at 526-27 (quoting *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007)).

Here, Reeves filed the motion to dismiss after the trial court had already made its oral ruling after trial but before it had entered its judgment. The plain language of CR 41(b)(3) shows that the defendant may file a CR 41(b)(3) motion to dismiss after the plaintiff rests its case in chief and before the defendant offers evidence, but the defendant cannot file the CR 41(b)(3) motion after the close of all the evidence. CR 41(b)(3). Because Reeves filed the CR 41(b)(3) motion to dismiss

after the trial court had already given its oral ruling after trial, we hold that the trial court did not err in ruling that the CR 41(b)(3) motion to dismiss was untimely.

B.       REPLEVIN CLAIM

          1.       Motion to Amend Complaint

Reeves argues that the trial court erred by granting Gravity's motion to amend its complaint to include the replevin claim after trial concluded. Reeves contends that he was prejudiced because he "was never able to take discovery on the new claim, to question witnesses at depositions, to prepare for trial on the claim, to question witnesses at trial on the claim, or to develop the many defenses, legal and equitable, to Gravity's new claim for Replevin." Br. of Appellant at 34-35. Reeves further contends that the new claim was "fully knowable, foreseeable, and available on day one of the case." Br. of Appellant at 35.

> CR 15(b) provides:
>
> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

Thus, under CR 15(b), a trial court may amend pleadings to conform to the evidence and issues actually litigated before the court to avoid the necessity of a new trial and a multiplying of lawsuits. *Green v. Hooper*, 149 Wn. App. 627, 636, 205 P.3d 134, *review denied*, 166 Wn.2d 1034 (2009). At the discretion of the trial court, the pleadings may be amended to conform to the evidence at any stage in the action, including at the conclusion of a trial or after judgment. *Id*.

A trial court may amend the pleadings to include an unpleaded claim. *Id.*

17

However, amendment under CR 15(b) cannot be allowed if actual notice of the unpleaded issue is not given, if there is no adequate opportunity to cure surprise that might result from the change in the pleadings, or if the issues have not in fact been litigated with the consent of the parties.

*Harding v. Will*, 81 Wn.2d 132, 137, 500 P.2d 91 (1972).

We will reverse a trial court's CR 15 ruling only on a showing of manifest abuse of discretion. *Herron v. Tribune Pub'g., Inc.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987). A court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *Gilmore v. Jefferson County Pub. Transp. Benefit Area*, 190 Wn.2d 483, 494, 415 P.3d 212 (2018). A ruling is manifestly unreasonable or based on untenable grounds when it is unsupported by the record or results from applying the wrong legal standard. *Id*. We will not find an abuse of discretion simply because we would have decided the case differently. *Id*. Rather, we must be convinced that no reasonable person would have adopted the view of the trial court. *Id*.

Replevin is an action seeking to recover personal property that is being wrongfully detained by someone who is not the legal owner of the property. *See Ray v. Hill*, 194 Wn. 321, 324, 77 P.2d 1009 (1938). In order to bring a replevin action, one must show:

"(a) That the plaintiff is the owner of the property or is lawfully entitled to the possession of the property by virtue of a special property interest . . . ;

(b) That the property is wrongfully detained by defendant;

(c) That the property has not been taken for a tax, assessment, or fine pursuant to a statute and has not been seized under an execution or attachment against the property of the plaintiff, or if so seized, that it is by law exempt from such seizure; and

(d) The approximate value of the property."

*Graham v. Notti*, 147 Wn. App. 629, 634-35, 196 P.3d 1070 (2008) (quoting RCW 7.64.020(2)), *review denied*, 166 Wn.2d 1006 (2009).

Here, the possession of the November 2006 Note was an issue extensively litigated before the trial court both during discovery and during trial. During discovery, Gravity sent Reeves an interrogatory and request for production of documents.[4] Reeves responded that he possessed the November 2006 Note, and should not have to give it back because the Babitzkes had forgiven the debt in 2014 and Reeves now fully owned the property that was the subject of the note. Mary Lou testified regarding the possession of the November 2006 Note both during her deposition and during trial. Charles also testified about the possession of the November 2006 Note during trial. Reeves did not object to the entry of this evidence at the trial on the ground that it was not within the issues made by the pleadings.

Because the evidence necessary to litigate the replevin issue was in the record before the trial court, Reeves was not prejudiced, and the trial court's decision to allow Gravity's amendment to the complaint to allege a claim for replevin was not manifestly unreasonable or based on untenable grounds. *See Gilmore*, 190 Wn.2d at 494. Therefore, the trial court did not manifestly abuse its discretion by granting Gravity's motion to amend its complaint.

---

[4] The interrogatory was before the trial court as part of a motion for summary judgment filed by Reeves.

2.      Statute of Limitations for Replevin Claim

Reeves argues that the replevin claim is barred by the statute of limitations.  Reeves

contends that the statute of limitations began in July 2008, when Reeves first defaulted on the

loan.[5]

The statute of limitations for "an action for taking, detaining, or injuring personal property,

including an action for the specific recovery thereof, or for any other injury to the person or rights

of another not hereinafter enumerated" is three years.  RCW 4.16.080(2).  This includes replevin.

*See Edison Oyster Co. v. Pioneer Oyster Co.*, 22 Wn.2d 616, 627, 157 P.2d 302 (1945).  Replevin

is an action seeking to recover personal property that is being wrongfully detained by someone

who is not the legal owner of the property.  *See Ray*, 194 Wn. at 324.

Whether the statute of limitations has expired is a legal question, but the underlying

circumstances that give rise to the action are questions of fact.  *Goodman v. Goodman*, 128 Wn.2d

366, 373, 907 P.2d 290 (1995).  The statute of limitations on an action begins to run when the

cause of action accrues, measured by when the plaintiff has a right to seek relief.  *Janicki Logging*

*& Constr. Co. v. Schwabe, Williamson & Wyatt, P.C.*, 109 Wn. App. 655, 659, 37 P.3d 309 (2001),

---

[5] Reeves also argues that Gravity's claim of replevin is barred "under equitable doctrines and
defenses such as laches, waiver, acquiescence, and related doctrines." Br. of Appellant at 37.  But
Reeves fails to provide any argument or legal authority for his assertion that Gravity's claim is
barred under equitable doctrines.  *See* RAP 10.3(a)(6) (stating that the Appellant's brief must
contain "argument in support of the issues presented for review, together with citations to legal
authority and references to relevant parts of the record."); *DeHeer v. Seattle Post-Intelligencer*, 60
Wn.2d 122, 126, 372 P.2d 193 (1962) (stating "Where no authorities are cited in support of a
proposition, the court is not required to search out authorities, but may assume that counsel, after
diligent search, has found none.").  Reeves merely makes the bare assertion that the claim of
replevin is barred by equitable doctrines and defenses.  Thus, Reeves fails to show that the claim
is barred.

*review denied*, 146 Wn.2d 1019 (2002). "[W]hen reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 603, 123 P.3d 465, *review denied*, 155 Wn.2d 1012, 122 P.3d 186 (2005).

Here, Reeves argues that the statute of limitations on a replevin claim began to run when Reeves first defaulted on the loan in July 2008. But in a replevin action, the act that begins the tolling of the statute of limitations is the wrongful detainment of the property by someone who is not the legal owner of the property. *See Ray*, 194 Wash. at 324. Here, the relevant act is the wrongful detainment of the November 2006 Note by Reeves, not the default on the loan.

The trial court found that the Babitzkes agreed to allow Reeves to take the original notes, deeds of trust and other transactional documents for recording and expected to get the documents back from Reeves. Reeves did not return the original notes, and the Babitzkes never asked for them back because the Babitzkes did not realize the importance of retaining physical possession of the original documents and eventually forgot that Reeves had possession of the original notes. After the Babitzkes assigned the promissory note to Gravity, Gravity filed the suit and, during the course of litigation, discovered that Reeves possessed the November 2006 Note. In response to Gravity's request for return of the note, Reeves refused to provide the November 2006 Note to Gravity in 2016. Thus, the wrongful detainment of the November 2006 Note occurred in 2016. Gravity moved to amend the complaint to add the claim of replevin two years later in 2018. Under these circumstances, the three-year statute of limitations had not expired, and Reeves' statute of limitations claim lacks merit.

C.    ENFORCEMENT OF THE PROMISSORY NOTE

Reeves argues that Gravity had no power to enforce the November 2006 Note because neither Gravity nor the Babitzkes ever had possession of the original note or a legal substitute for the originals as required under the Washington Uniform Commercial Code (UCC). We disagree.

Here, the Babitzkes assigned their rights as holders of the note to Gravity, and thus Gravity, the assignee, stands in the shoes of the Babitzkes, the assignors. *See Norwest Business Finance, LLC v. Able Contractor, Inc.*, 196 Wn. App. 569, 577, 383 P.3d 1074 (2016) (assignee in sale of an account takes the assignor's right to payment); *Carlile v. Harbour Homes, Inc.,* 147 Wn. App. 193, 208, 194 P.3d 280 (2008). Because Gravity is entitled to the November 2006 Note as the Babitzkes' assignee and is entitled to possession of the note under replevin, Gravity is entitled to enforce the instrument. *See* RCW 62A.3-301(ii) (stating a person entitled to enforce an instrument means "a nonholder in possession of the instrument who has the rights of a holder"). Therefore, Gravity is entitled to enforce the November 2006 Note.

D.    DAMAGES

1.    Reeves' Obligation Under the November 2006 Note

Reeves argues that his obligation to the Babitzkes was $1,000,000, which included the payments to PNC Bank to cover the existing mortgage on the front parcel, not $1,000,000 in addition to the payments to PNC Bank. We disagree.

We apply a two-step standard of review for challenges to a trial court's findings of fact and conclusions of law: first, we determine if the trial court's findings of fact were supported by substantial evidence in the record, and if so, we next decide whether those findings of fact support the trial court's conclusions of law. *Landmark Development, Inc. v. City of Roy*, 138 Wn.2d 561,

573, 980 P.2d 1234 (1999). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *In re Marriage of Griswald*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002), *review denied*, 148 Wn.2d 1023 (2003). Unchallenged findings of fact are verities on appeal. *Fuller v. Employment Sec. Dept.*, 52 Wn. App. 603, 605, 762 P.2d 367 (1988). We review a trial court's conclusions of law de novo. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).

"The fact that a court designates its determination as a 'finding' does not make it so if it is in reality a conclusion of law. Under Washington practice, a conclusion of law mislabeled as a finding, will be treated as a conclusion." *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 584 P.2d 968 (1978). A finding of fact is defined as "an 'assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.'" *Id.* (quoting *Leschi v. Highway Comm'n.*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974)).

> If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact, but if a determination is made by a process of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law.

*Goodeill v. Madison Real Estate*, 191 Wn. App. 88, 99, 362 P.3d 302 (2015) (quoting *Moulden & Sons*, 21 Wn. App. at 197 n.5).

Whether or not Reeves agreed to pay $1,000,000 for the property in addition to the mortgage payments to PNC Bank is a determination of the legal effect of the language of the November 2006 Note, and thus, is a conclusion of law. Therefore, we review the trial court's

determination that Reeves agreed to pay the Babitzkes $1,000,000 for the property in addition to the payments to PNC Bank as a conclusion of law.[6] *See Moulden & Sons*, 21 Wn. App. at 200.

A promissory note is a contract to pay money. *Dept. of Revenue v. Sec. Pac. Bank of Wash.*, 109 Wn. App. 795, 808, n.11, 38 P.3d 354 (2002); *Reid v. Cramer*, 24 Wn. App. 742, 744, 603 P.2d 851 (1979). *Matter of Estate of Petelle*, 195 Wn.2d 661, 665, 462 P.3d 848 (2020). Our primary goal in interpreting a contract is to ascertain the intent of the parties. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). We determine intent by focusing on the objective manifestation of the parties in the written contract. *Hearst Commc'ns, Inc. v. Seattle Times Co.,*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Accordingly, we consider only what the parties wrote and give words in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent. *Hearst*, 154 Wn.2d at 503-04. A contract "should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions." *Colo. Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 588, 167 P.3d 1125 (2007) (footnote omitted).

Here, the November 2006 Note states, in relevant part:

The undersigned promises to pay to the order of Charles and Mary Lou Babitzke the amount of **$900,000.00** excluding the $100,000.00 paid on July 21, 2006. The total purchase price is $1,000,000.00. The Undersigned further agrees and promises to assume payment responsibility for the mortgage currently on the property in the amount of $194,000.00. The mortgage can be paid off at any time. If the Undersigned elects to pay off all or any portion of the Note above the monthly payments assumed herein, that payment amount shall both reduce the amount of

---

[6] Even if finding of fact 5 is construed to be a finding, Reeves fails to assign error to the trial court's finding of fact 5. Under RAP 10.3(g), "A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number." Because Reeves fails to assign error to finding of fact 5, it is unchallenged and a verity on appeal. *See Fuller*, 52 Wn. App. at 605.

the outstanding Note and be credited against the upcoming $100,000.00 annual payment.

Trial Ex. 3 at 1 (November 13, 2006 Promissory Note). The objective manifestations of the parties show that Reeves agreed to pay $1,000,000 and "further" agreed to assume the payment responsibility of the mortgage in the amount of $194,000.00. Trial Ex. 3 at 1 (November 13, 2006 Promissory Note) Thus, the November 2006 Note shows that Reeves agreed to pay $1,000,000 in addition to the PNC Bank debt.

Reeves argues that the following language is circular and shows that:

The mortgage can be paid off any time. If the Undersigned [Reeves] elects to pay off all or any portion of the Note above the monthly payments assumed herein, that payment amount shall . . . reduce the amount of the outstanding Note . . . .

Br. of Appellant at 40-41 (alterations in original) (quoting Trial Ex. 3 at 1 (November 13, 2006 Promissory Note)). But, as shown above, the plain language of the November 2006 Note includes both the $1,000,000 plus the $194,000 debt to the PNC Bank. Thus, if Reeves elected to make a payment in excess of the agreed upon periodical payments, that extra payment would be credited against the outstanding amount of the Note for $1,194,000 and "the upcoming $100,000.00 annual payment." Trial Ex. 3 at 1 (November 13, 2006 Promissory Note). Reeves' argument to the contrary lacks merit.

Reeves further argues that the July 2006 Note shows that the total price was only $1,000,000. But the trial court found that

[t]he July promissory note was later amended and restated on November 13, 2006, on which date Mr. Reeves, for valuable consideration, made, executed and delivered to Charles and Mary Lou Babitzke at a closing where Reeves and the Babitzkes were physically present an original promissory note, a copy of which was received in evidence, marked as Exhibit 3 and by reference included herein (hereinafter, the "November 2006 Note").

25

CP at 259. Reeves does not challenge this finding, and thus, it is a verity on appeal. *See Fuller*, 52 Wn. App. at 605. Therefore, the November 2006 Note is the relevant contract, not the July 2006 Note. Reeves' argument that his obligation to the Babitzkes was only $1,000,000 for both tax parcels fails.

2.      PNC Bank Mortgage

Reeves argues that "Gravity should . . . be estopped from claiming both the unpaid Note amount and the unpaid PNC Bank mortgage." Br. of Appellant at 42 (emphasis omitted). We disagree.

The trial court found that Reeves had paid a total of $203,743.94, which left $796,256.06 due and owing under the November 2006 Note, and the parties stipulated at trial that $200,000 of the debt was uncollectable due to the statute of limitations. Thus, Reeves owed $596,256.06.

The $596,256.06 judgment against Reeves plus the $200,000 that the parties stipulated was uncollectable due to the statute of limitations plus the $203,743.94 that Reeves had previously paid, equals $1,000,000. As discussed above, under the November 2006 Note, Reeves agreed to pay $1,000,000 for the property, not including the PNC Bank debt on the parcel with a house on it. Therefore, the judgment amount does not include the money owed to PNC Bank.[7] We hold that Reeves' argument fails.

---

[7] Reeves states in a footnote that he "questions why a judgment on a loan at zero percent interest (Tr. Ex. 3) gets to earn 12%." Br. of Appellant at 40 n.2. Reeves fails to offer argument or authority regarding this alleged error. In the absence of argument or authority, Reeves' claim fails. *See* RAP 10.3(a)(6) (stating that the appellant's opening brief should contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

E.      TRIAL CONTINUANCE DENIAL

Reeves argues that the trial court erred by denying his request for a continuance when his counsel had joined the case one week before trial. Reeves contends that "[u]ndersigned counsel could have done a better job for Mr. Reeves and our court system, if he had been afforded a few weeks to prepare for trial."[8] Br. of Appellant at 44.

Whether a motion for continuance should be granted or denied is a matter discretion with the trial court, reviewable on appeal for manifest abuse of discretion. *Jankelson v. Cisel*, 3 Wn. App. 139, 141, 473 P.2d 202 (1970), *review denied*, 78 Wn.2d 996 (1971). A court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *Gilmore*, 190 Wn.2d at 494. A ruling is manifestly unreasonable or based on untenable grounds when it is unsupported by the record or results from applying the wrong legal standard. *Id*.

> In exercising its discretion, the court may properly consider the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court.

*Balandzich v. Demeroto*, 10 Wn. App. 718, 720, 519 P.2d 994, *review denied*, 94 Wn.2d 1001 (1974).

Here, the trial court based its denial on the fact that the case had been pending for almost two years and that Reeves is a sophisticated litigant who had ample notice of the trial date and

---

[8] During the oral argument, Reeves argued that he offered to pay for costs that Gravity would incur due to a continuance. Wash. Court of Appeal oral argument, *Gravity Segregation LLC, v. Reeves*, No. 52425-2-II (Sept. 1, 2020), at 4 min., 21 sec. through 4 min., 36 sec. (on file with court) . There is no evidence in the record that Reeves offered to pay for any costs that Gravity would incur due to a continuance.

should have been prepared. Additionally, the trial court noted the "significant hardship to the Plaintiff" to have to "bifurcate" the trial without a valid reason. 3 VRP (March 8, 2018) at 9-10. Gravity had flown in witnesses from Utah, and Gravity argued that allowing Reeves to present his case-in-chief weeks after Gravity's case would "give them the unfair advantage by giving them weeks to then prepare their defense to that." 3 VRP (March 8, 2018) at 8.

Based on the record and applicable legal standard, which allows the trial court to consider prejudice to the adverse party and "any other matters that have a material bearing upon the exercise of the discretion vested in the court," the trial court's ruling was not manifestly unreasonable or based on untenable grounds. *Balandzich*, 10 Wn. App. at 720; *see Gilmore*, 190 Wn.2d at 494. Thus, the trial court did not abuse its discretion in denying Reeves' request for a continuance.

## ATTORNEY FEES ON APPEAL

Gravity requests an award for attorney fees for the cost of defending this matter on appeal. Gravity argues that "[a]s the individual who signed the promissory note, Reeves is bound by the promise to pay attorney's fees contained within it." Br. of Resp't. at 40.

We may grant an award of reasonable attorney fees on appeal to a party that requests it in its opening brief, as long as applicable law provides for such an award. RAP 18.1. RCW 4.84.330 provides that a prevailing party is entitled to attorney fees if the contract which is the subject of the action authorizes such an award. *Marine Enterprises, Inc. v. Security Pacific Trading Corp.*, 50 Wn. App. 768, 772, 750 P.2d 1290 (1988). When both parties to an action are afforded some measure of relief and there is no singularly prevailing party, neither party is entitled to attorney's fees under RCW 4.84.330. *Id*.

Here, the November 2006 Note states,

> If this note is placed in the hands of an attorney for collection, the undersigned promises and agrees to pay the reasonable collection costs of the holder hereof; and if suit or action is filed hereon, also promises to pay (1) holder's reasonable attorney's fees to be fixed by the trial court and (2) if any appeal is taken from any decision of the trial court, such further sum as may be fixed by the appellate court, as the holder's reasonable attorney's fees in the appellate court.

Trial Ex. 3 at 1 (November 13, 2006 Promissory Note).

We award attorney fees on appeal to Gravity because the November 2006 Note authorizes an award and Gravity is the prevailing party as required under RCW 4.84.330. Accordingly, we grant Gravity's' request for appellate attorney fees pursuant to RAP 18.1.

CONCLUSION

We hold that the trial court 1) did not err by denying Reeves' motion to dismiss under CR 41 and ruling that Gravity was entitled to judgment, 2) did not err by granting Gravity's motion to amend its complaint to add a claim of replevin, 3) did not err in ruling that the replevin claim was not barred by the statute of limitations, 4) did not err in concluding Gravity had the authority to enforce the promissory note, 5) did not err by concluding that Reeves' obligation under the November 2006 Note was $1,000,000 plus the PNC Bank mortgage, and 6) did not err in denying Reeves' request for a continuance. Accordingly, we affirm the trial court's Findings of Fact and Conclusions of Law and Judgment and Decree of Foreclosure.

No. 52425-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Glasgow, J.